68743, 68744. THOMPSON et al. v. BANK OF THE SOUTH;
and vice versa.
(323 SE2d 877)

CARLEY, Judge.
Resolution of the issues which are raised in the instant appeals necessitates a rather lengthy factual recitation.

A dispute arose between Brenda Sue Thompson and Melton Harrell concerning the ownership of and authority to control AMC Realty Company, Inc. (AMC). This dispute led to Harrell's initiation of a lawsuit against Thompson. The accounts of AMC were maintained at the Bank of the South (Bank), and, consequently, competing claims for access to AMC's accounts were made on the Bank by both Harrell and Thompson.

On March 29, 1983, the trial court entered a temporary restraining order in the Harrell-Thompson litigation. Insofar as it is relevant here, that order stated that "pending resolution of the merits of the subject action, or until further order . . . Thompson is authorized as President of AMC . . . to exercise the powers of that office and as said President to carry on the affairs of AMC . . ., said powers including but not limited to . . . the withdrawal of funds from the bank accounts of said corporation. . . ."

The Bank did not deem the temporary restraining order to be sufficient protection against its potential liability with regard to the AMC accounts. It moved to intervene in the Harrell-Thompson litigation for the sole purpose of filing an interpleader action with regard to the accounts. At this point in the litigation, the trial court elected not to rule on the Bank's motion regarding interpleader. Instead, the trial court entered an order on May 17, 1983, which purported to clarify its previous temporary restraining order of March 29, 1983. The order of May 17, 1983, required Harrell to "notify the Bank . . . or any other person or institution to whom [he] sent notices asserting [his] authority to act on behalf of AMC . . ., that the Court, by interlocutory order, has found . . . [that] Thompson has the authority to act on behalf of AMC . . . and that pending final disposition of this matter, . . . Harrell . . . [has] no authority to act on AMC's behalf." The trial court concluded that "[b]y the above clarification of the Court's March 29, 1983 order, it is this Court's opinion that no ruling need be made on . . . the Bank['s] . . . motion. . . ."

The trial court's order of May 17, 1983, did not have the desired effect of ending the controversy over rightful access to AMC's accounts, and, as a consequence, two lawsuits were thereafter filed against the Bank. One of the actions was brought by Thompson and the other by AMC. Because of the continuing uncertainty and the two suits which had been brought against it, the Bank renewed its motion to intervene and interplead in the Harrell-Thompson litigation. On November 1, 1983, the trial court entered an order, nunc pro tunc October 25, 1983. In this order, the trial court finally granted the Bank's motion and ordered that the funds in the AMC accounts be paid into the registry of the court. The trial court further ordered "that upon payment of the funds . . . into the Registry of the Court, [the] Bank . . . shall be dismissed from the case and released from

any and all liability with respect to claims arising from or relating to its receipt, payment, delivery or other handling of the funds. . . ."

On December 22, 1983, however, the trial court vacated and set aside its earlier order on the Bank's motion. This resulted from the trial court's conclusion that the language of its earlier order releasing the Bank "from any and all liability with respect to claims arising from or relating to its receipt, payment, delivery or other handling of the funds . . ." had "the effect of determining and settling issues outside and beyond those issues directly raised in this case, and that effect [was] unintentional and unknown to the court at the time [the earlier] Order was signed. . . ." Accordingly, the trial court entered a new order, granting the Bank's motion and directing payment of the funds into the registry of the court. The order further stated that upon such payment the Bank would then be dismissed from the action, but did not contain the broad release language which had appeared in the earlier order. This December 22, 1983, order of dismissal did contain a direction as to the entry of a final judgment as provided by OCGA § 9-11-54 (b).

In Case Number 68743, Thompson and AMC appeal from the trial court's original order of November 1, 1983, nunc pro tunc October 25, 1983. In Case Number 68744, the Bank appeals from the trial court's order of December 22, 1983.

Thompson and AMC concede that if the trial court's order of December 22, 1983, which vacated and set aside the earlier order, is affirmed, their appeal from that earlier order will be moot. Accordingly, we will consider Case Number 68744 first.

*Case Number 68744.*

1. The Bank first contends that the trial court was without authority to enter an order on December 22, 1983, in its November Term, vacating and setting aside an order entered nunc pro tunc October 25, 1983, in its September Term.

"When a court renders *a final judgment* in a case, or on any phase of it, it has no jurisdiction to change it at a subsequent term unless jurisdiction is reserved at the term at which it is rendered. General jurisdiction of the case at a subsequent term does not amount to a retention of jurisdiction over *final judgment* as to some part of the case entered at a previous term. [Cit.]" (Emphasis supplied.) *Frazier v. Beasley*, 59 Ga. App. 500, 502 (1 SE2d 458) (1939). The trial court could have directed that the original nunc pro tunc order dismissing the Bank from the multiple-party, multiple-claim action become "final" pursuant to OCGA § 9-11-54, but it did not. Accordingly, that order was "subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities

of all the parties." OCGA § 9-11-54 (b). Thus, it was within the trial court's discretion to reconsider the non-final order that it had entered in its previous term. See *MARTA v. Gould Investors Trust*, 169 Ga. App. 303, 306 (2) (312 SE2d 629) (1983). In the exercise of that discretion, the trial court was authorized to vacate its original order. See *Ga. Farm Buildings v. Willard*, 169 Ga. App. 394 (313 SE2d 112) (1984).

2. The Bank asserts that the December 22, 1983, order of dismissal is erroneous insofar as it does not contain the broad release language of the vacated previous order. The contention is that, having successfully initiated an interpleader action and having paid the funds into court, the Bank should be released from liability regarding the funds.

"The right to interpleader under [OCGA § 9-11-22] . . . depend[s] . . . upon the stakeholder's good-faith fear of adverse claims. . . ." *Algernon Blair, Inc. v. Trust Co.*, 224 Ga. 118, 121 (160 SE2d 395) (1968). The "adverse claims" which authorize interpleader are those "which might be brought against [the stakeholder] by the various claimants to the fund which he [holds.]" *Farris v. United States*, 230 Ga. 862, 864 (199 SE2d 782) (1973). Thus, where the "adverse claims" on a fund have in fact been interpleaded, it is proper to dismiss the holder of the disputed fund as a party to the action, assuming that "[n]o further relief against [the holder is being] sought or necessary." *Cheek v. Savannah Valley Production &c. Assn.*, 244 Ga. 768, 770 (5) (262 SE2d 90) (1979). This is true because, if no direct *personal* liability is being sought and the *only* claims being asserted are *to the fund* that a party holds, his capacity in the action is that of "merely a stakeholder." *Cheek v. Savannah Valley Production &c. Assn.*, supra at 770. Under such circumstances, the mere stakeholder's successful invocation of the interpleader procedure serves to discharge him from the threat of *potential* liability to the adverse claimants of the disputed funds. See *Kelly v. C & S Nat. Bank*, 160 Ga. App. 405 (287 SE2d 343) (1981).

Thus, to the extent that the trial court's order of December 22, 1983, found the Bank's interpleader action was authorized, the Bank was properly dismissed as a party. No claims premised upon its existing personal liability were being asserted against the Bank *in the instant case*. Only the threat of the Bank's potential liability on the "adverse claims" of Thompson and Harrell for access to the AMC accounts was at issue. The Bank was not, however, entitled to a general release from *any and all liability* regarding the AMC accounts. Assuming the existence of claims predicated upon the Bank's existing personal liability to *whomever* was the rightful claimant of the AMC accounts, such claims would not be based upon the Bank's capacity as the "mere stakeholder" of the disputed accounts, and the authoriza-

tion of its interpleader action in the instant case would not resolve those claims. To give but one example, payment into court of an existing bank account fund pursuant to interpleader would not necessarily serve to extinguish any existing personal liability to the rightful claimant under OCGA § 11-3-419 for the holder's previous conversion of the funds in that account.

The trial court correctly recognized that the language of its previous order afforded the Bank unwarranted protection from potential claims premised upon its personal liability with regard to the AMC accounts, rather than limiting that protection merely to its potential liability as against the "adverse claims" of Harrell and Thompson. Vacating that order and entering a new one which merely dismissed the Bank from the instant action did not deprive the Bank of anything to which it was otherwise entitled. We know of no reason why the trial court's authorization of interpleader in the instant case may not be raised defensively as to such claims in the two separate actions currently pending against the Bank which are premised upon "the contention that [the Bank, as] the stakeholder of the AMC account, wrongfully refused to pay over the funds to one of the claimants." *Kelly v. C & S Nat. Bank*, supra at 408. As to such *other* claims which may be asserted against the Bank in the two separate actions, the authorization of interpleader in the instant case affords the Bank no discharge from liability. The claims asserted in the separate actions are not before us, and the issue of the Bank's liability for such claims is properly to be resolved in the context of those separate actions.

*Case Number 68743.*

3. The appeal is dismissed as moot.

*Judgment affirmed in Case No. 68744. Appeal dismissed in Case No. 68743. Birdsong, P. J., and Beasley, J., concur.*

DECIDED NOVEMBER 14, 1984.

*David E. Betts, Donald B. DeLoach*, for appellants (case no. 68743).

*Richard R. Cheatham, John J. Worley*, for appellee.

*Richard R. Cheatham, John J. Worley*, for appellant (case no. 68744).

*Martin L. Ellin, Donald B. DeLoach, Beryl H. Weiner, David E. Betts, Charles N. Center*, for appellees.