2498

FIRST UNION NATIONAL BANK OF SOUTH CAROLINA and First Union Brokerage Services, Inc., Respondents/Appellants v. FCVS COMMUNICATIONS, VSC Holdings, Inc., Walter K. Flynn, Murray Michaels, and Vodofsky Finance Co., Defendants, of which FCVS Communications is, Appellant/Respondent.

(469 S.E. (2d) 613)

Court of Appeals

*Craig K. Davis* and *James J. Flanagan,* Columbia, *for appellant/respondent.*

*James R. Allen,* of *Barnes, Alford, Stork & Johnson,* Columbia, *for respondents/appellants.*

Heard Mar. 5, 1996.

Decided Apr. 15, 1996.

GOOLSBY, Judge:

First Union National Bank of South Carolina and First Union Brokerage Services, Inc. (First Union) brought this interpleader action under Rule 22(a), SCRCP, against FCVS Communications, VSC Holdings, Inc., Walter K. Flynn, Murray Michaels, and Vodofsky Financial Company, alleging the possibility of conflicting claims on an account First Union held in FCVS's name. The defendants counterclaimed, alleging First Union wrongfully refused to follow the instructions of FCVS's "Majority In Interest Partners" with regard to the fund in the FCVS account. After holding a hearing limited to the issue of whether a grant of interpleader was appropriate, the trial court granted First Union's interpleader, dismissed First Union from the suit with prejudice, and summarily denied its motion for attorney fees. First Union and FCVS appeal. We affirm in part, reverse in part, and remand.

FCVS is a South Carolina general partnership. Its four general partners are VSC Holdings, Flynn, Michaels, and Vodofsky Financial Company.[1] Michaels and Flynn initially opened depository accounts in FCVS's name in 1988 at South Carolina Federal Bank. South Carolina Federal merged into First Union in February, 1993. Michaels and Flynn signed the signature cards on the accounts and conducted business at First Union in the name of FCVS.

On March 11, 1994, First Union received a letter from David Warmflash, a New York attorney claiming to represent FCVS. Warmflash advised the bank the partnership had ceased doing business and there was a dispute between the partners "with respect to the distribution of the balance of the assets of the partnership." This letter conflicted with First Union's previous assumption the Michaels and Flynn had authority to transact business on the account. Upon receipt of Warmflash's letter, First Union froze FCVS's account.

---

[1] VSC Holdings was actually dissolved in 1994. Its 69.75 percent interest in FCVS was equally divided among its three sole stockholders, E. Craig Coats, Jr., Ronald M. Stuart, and the Estate of William J. Voute.

# I.

## A.

FCVS argues the trial court erred in granting First Union the interpleader because the trial court considered two letters that were created and entered into evidence after the hearing was concluded.[2] Without those letters, FCVS argues, the evidence before the trial court was insufficient to entitle First Union to the interpleader. We disagree. The posthearing letters notwithstanding, the evidence before the trial court was sufficient to support the trial court's grant of interpleader.

Rule 22(a), SCRCP, is substantially the same as its counterpart in the Federal Rules of Civil Procedure; therefore, in the absence of prior state law on the issue in question, federal cases interpreting the rule are persuasive. *See Roberts v. Peterson*, 292 S.C. 149, 355 S.E. (2d) 280 (Ct. App. 1987) (where a state rule has adopted the language of a federal rule, federal cases interpreting the federal rule are persuasive in the absence of prior state law).

"The historical and still the primary purpose of interpleader if to enable a neutral stakeholder, usually an insurance company or a bank, to shield itself from liability for paying over the stake to the wrong party. This is done by forcing all the claimants to litigate their claims in a single action brought by the stakeholder." *Indianapolis Colts v. Mayor of Baltimore*, 733 F. (2d) 484, 486 (7th Cir. 1984). Furthermore, interpleader provisions, being remedial in nature, are to be liberally construed so as best to effectuate their purposes. *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 87 S.Ct. 1199, 18 LEd. (2d) 270 (1967). There need not be actual competing claims against the stakeholder for him to be entitled to interpleader, as long as there is the potential for multiple claims. *See* 3A JAMES W. MOORE ET AL., *MOORE'S FEDERAL PRACTICE* ¶ 22.08[2], at 22-62 (2d) ed. 1995) ("It is . . . clear that interpleader jurisdiction is not denied merely because the claims which the stakeholder seeks to have adju-

---

[2] The letters dated July 14, 1994 notified First Union that Michaels and Flynn did not agree to disbursement of the funds to Warmflash; Michaels and Flynn constitute the "Majority In Interest of the Partnership"; and First Union will be held liable for any breach of the account agreement. The hearing took place on July 7, 1994.

dicated are not actual but are instead prospective in nature."). The right to interpleader depends merely upon the stakeholder's good-faith fear of adverse claims. *Id.* ¶ 22.02[1], at 22-7; *see also* 7 CHARLES A. WRIGHT ET AL., *FEDERAL PRACTICE AND PROCEDURE* § 1704, at 500 (1986) (interpleader affords a remedy to a stakeholder "who fears that he will be exposed to the vexation of defending multiple claims" on the fund); 48 C.J.S. *Interpleader* § 14, p. 142 (1981) (to justify interpleader, a stakeholder must "in good faith, have a real and reasonable fear of exposure to double liability or the vexation of conflicting claims").

On the issue of First Union's entitlement to interpleader, the Alabama Supreme Court case of *Air Movers of America, Inc. v. State Nat'l Bank of Alabama,* 293 Ala. 312, 302 So. (2d) 517 (1974) is instructive. Air Movers was a depositor at State National Bank. One day, a group of people claiming to be the controlling directors or shareholders of Air Movers demanded the bank honor only their instruction. These controlling shareholders demanded the bank not honor checks signed or payable to the people whose names appeared on the bank's records as signatories for the corporation. Not knowing whether to abide by its signature card or the instructions of counsel for the controlling interest, the bank brought an interpleader action. In granting the interpleader, the trial court found the bank confronted the hazard of double liability.

At the hearing in the present case, First Union introduced its depositor agreement with FCVS, which provided:

> It is hereby certified by the undersigned, being all of the several partners of FCVS, that *Walter K. Flynn and Murray Michaels are general partners of FCVS, and have all requisite legal and actual authority to legally bind FCVS* to all terms and conditions stated in the "Amended and Restated Credit Agreement" dated August 17, 1992 by and between FCVS and First Union National Bank of North Carolina, and to legally bind FCVS to all terms and conditions stated in any and all agreements, instruments and documents executed pursuant to the terms of the Credit Agreement, including but not limited to each of the "Loan Documents" as defined in the credit agreement. (Emphasis added.)

FCVS also presented the March 11 letter from Warmflash, which stated:

> [T]here currently exists a lack of agreement between the partners with respect to the distribution of the balance of the assets of the partnership, including, but not limited to, the bank accounts maintained at your Bank. Therefore, unless you receive written notification from the "Majority in Interest," as that term is defined in the FCVS Communications Partnership Agreement, *we respectfully advise you that no individual partner has authority to withdraw funds from the partnership account maintained at your Bank.* (Emphasis added.)

Finally, First Union introduced deposition testimony from one of First Union's vice presidents that Flynn's attorney recommended to First Union that it seek the remedy of interpleader in regard to the FCVS account.

It is certainly understandable that the conflicting instructions and Flynn's attorney's advice to seek interpleader would cause First Union to fear conflicting claims to the funds in the FCVS account. We therefore find, notwithstanding the posthearing letters, the evidence presented at the hearing was sufficient to support the trial court's grant of interpleader. Accordingly, the trial court's consideration of the posthearing evidence did not constitute reversible error. *See JKT Co. v. Hardwick*, 274 S.C. 413, 265 S.E. (2d) 510 (1980) (an error not shown to be prejudicial does not constitute grounds for reversal).

### B.

FCVS also argues the trial court erred in granting interpleader in light of the bank's refusal to use S.C. Code Ann. § 34-11-110 (1987) to avoid Flynn's and Michael's claims.

South Carolina Code Ann. § 34-11-110 states, "[n]otice to any bank ... doing business in this State of an *adverse claim* to a deposit standing on its books to the credit of any person shall not be effectual to cause the bank ... to recognize the adverse claimant" unless the adverse claimant first procures a restraining order or other appropriate form of injunction or unless the claimant posts a bond. (Emphasis added.) In the present case, however, First Union's quandary was it did not

know who was properly representing FCVS and who had the "adverse claim."[3] Had First Union guessed wrong and invoked the statute against the wrong party, it still could have incurred liability. The grant of interpleader was therefore appropriate.

## C.

FCVS next argues the trial court erred in dismissing ■ First Union from the suit with prejudice when the merits of FCVS's counterclaims against the bank were not before the trial court. We agree.

We note initially First Union's failure to respond to this argument in its brief could amount to a concession that the trial court ruled incorrectly. *See* 5 Am. Jur. (2d) *Appellate Review* § 555, at 254 (1995) ("[i]f an appellee fails to respond to an issue in its brief, the [appellate] court may treat the failure to respond as a confession that the appellant's position is correct").

Regardless of First Union's failure to respond, how- ■ ever, we find although the trial court correctly granted interpleader, it should not have dismissed First Union from the suit where First Union faced counterclaims not predicated on its capacity as a stakeholder. The Georgia Court of Appeals faced a situation similar to the present one in *Thompson v. Bank of the South*, 172 Ga. App. 579, 323 S.E. (2d) 877 (1984). In *Thompson*, the court stated although the bank was entitled to interpleader,

> [it] was not . . . entitled to a general release from *any and all liability* regarding the AMC accounts. Assuming the existence of claims predicated upon the Bank's existing personal liability to *whomever* [sic] was the rightful claimant of the AMC accounts, such claims would not be based upon the Bank's capacity as the "mere stakeholder" of the disputed accounts, and the authorization of its in-

---

[3] The dissent concludes notification to First Union by Warmflash that Michaels's and Flynn's authority should be restricted represented the adverse claim to FCVS's account. We, on the other hand, do not believe the issue was so clear-cut that First Union could invoke § 34-11-110 against Warmflash and those he represented without fear of potential liability. Warmflash, after all, did not purport to make an "adverse claim" on FCVS's account. Rather, he claimed he represented the depositor, FCVS, and was seeking on FCVS's behalf merely to revoke the "authority of any individual partner to withdraw funds from the partnership accounts."

terpleader action in the instant case would not resolve those claims.

*Id.* 323 S.E. (2d) at 881 (emphasis in original); *see also Cheek v. Savannah Valley Prod. Credit Ass'n,* 244 Ga. 768, 262 S.E. (2d) 90 (1979) (where the adverse claims on a fund have been interpleaded, it is proper to dismiss the holder of the disputed fund as a party to the action, *assuming that "[n]o further relief against [the holder is being] sought or necessary."*) (emphasis added); *cf. Nationwide Mut. Ins. Co. v. Simmonds,* — S.C. —, 434 S.E. (2d) 277 (1993) (in an interpleader action, the insurance company's tender of the policy limits did not relieve the company of its duty to defend the insured).

Here, FCVS's counterclaims were not merely claims based on First Union's capacity as the stakeholder of the funds. FCVS sought damages in addition to the right to access the account funds.[4] Accordingly, the trial court erred when it dismissed First Union from the action with prejudice without regard to FCVS's counterclaims against the bank.

## II.

In its cross-appeal, First Union argues the trial court should have granted its request for attorney fees. We recognize that the general rule is attorney fees are not recoverable absent an authorizing statute or contract. *Smoak v. Carpenter Enters.,* 319 S.C. 222, 460 S.E. (2d) 381 (1995). Here, however, because FCVS concedes the case of *Norris v. Schroeder,* 16 S.C. Eq. (McMul. Eq.) 422 (1841) justifies such an award, we will assume for the purpose of this case such an award is recoverable. *See* 5 Am. Jur. (2d) *Appellate Review* § 555, at 254 (1995) ("[i]f an appellee fails to respond to an

---

[4] Specifically, FCVS alleged, among other things, First Union's refusal to follow the instructions of the "Majority In Interest Partners" of FCVS with regard to the funds held for FCVS "is in violation of the depositors' agreement" and

deprives FCVS and its partners of its money, interferes with and prevents the final dissolution of FCVS, deprives FCVS and its partners of the use of the money to obtain substantially higher returns than now provided by the unlawful detention of FCVS's funds, requires FCVS to incur substantial expense and attorney's fees to defend this action, and assert this counterclaim to obtain its money, and provides those in a minority interest in the partnership an effective attachment of the partnership assets which would not be available at law.

issue in its brief, the [appellate] court may treat the failure to respond as a confession that the appellant's position is correct"). A decision whether to award attorney fees otherwise recoverable is within the trial court's discretion. *Donahue v. Donahue*, 299 S.C. 353, 384 S.E. (2d) 741 (1989); *see also* 7 CHARLES A. WRIGHT ET AL., *FEDERAL PRACTICE AND PROCEDURE* § 1719, at 629 (1986) ("A federal court has discretion to award costs and counsel fees to the stakeholder in an interpleader action, whether brought under Rule 22 or the interpleader statute, whenever it is fair and equitable to do so."). Because the trial court does not appear to have exercised its discretion, we remand First Union's request for attorney fees to the trial court. *See Fontaine v. Peitz*, 291 S.C. 536, 354 S.E. (2d) 565 (1987) (when the trial court is vested with discretion, but its ruling reveals no discretion was, in fact, exercised, an error of law has occurred).

Affirmed in part, reversed in part, and remanded.

HEARN, J., concurs.

HOWELL, C.J., dissents in a separate opinion.

HOWELL, Chief Judge, dissenting:

I respectfully dissent. Interpleader is appropriate when the party seeking it "is or may be exposed to double or multiple liability." Rule 22(a), SCRCP. In this case, I agree with the appellant the bank was protected by S.C. Code Ann. § 34-11-110 (1987), thus there was no possibility of multiple liability, and interpleader was inappropriate. Section 34-11-110 permits the bank to disregard an adverse claim unless the claimant furnishes some assurance either through legal process or other surety indemnifying the bank. If the depositor is a fiduciary to the adverse claimant, as may be the case here between partners and the partnership, this section does not apply if the claimant submits an affidavit delineating the facts of the fiduciary relationship and the facts showing reasonable cause of belief of misappropriation by the depositor. The adverse claimants in this case, represented by Attorney Warmflash, did not furnish the assurance or affidavit necessary to require the bank to consider the adverse claim.

The majority concludes section 34-11-110 does not apply because the bank could not recognize who had an adverse claim.

I disagree. The bank account was set up to permit Michaels and Flynn to transact business on behalf of the partnership. I conclude notification to the bank by Warmflash that the authority of Michaels and Flynn should be restricted represented an adverse claim sufficient to protect the bank under section 34-11-110.