A00A2284, A00A2286. GILBERT v. MONTLICK & ASSOCIATES, P.C. (two cases).

(546 SE2d 895)

MILLER, Judge.

Fred A. Gilbert, attorney, appeals from two separate orders of the trial court arising from attorney's liens filed against his former law firm. As both appeals involve the same operative facts, we have consolidated them in this opinion. For the reasons that follow, we affirm.

The relevant facts are as follows. Gilbert and David Montlick were partners in the law firm of Gilbert & Montlick, P.C. After a business dispute, Gilbert & Montlick, P.C. initiated arbitration proceedings against Gilbert, which resulted in a ruling terminating the law practice. Under the arbitration ruling, Gilbert received a final award of more than $1.8 million, $1.6 million of which was payable in quarterly installments of $93,446.98. Gilbert attempted to have the arbitration award vacated, but the arbitration results were upheld in superior court and on appeal in this court in *Gilbert v. Montlick*.[1]

The law firm of Kilpatrick Stockton (KS) represented Gilbert in the arbitration proceedings, and Erck, Dever & Merlin, LLC (EDM) assisted Gilbert in challenging the arbitration award. KS and EDM both withdrew from their representation of Gilbert in 1997, and Gilbert has since been representing himself pro se.

On August 14, 1997, EDM served an attorney's lien under OCGA § 15-19-14[2] on Montlick & Associates (MA) for $43,468.91, demanding that MA pay EDM any money that MA otherwise owed Gilbert under the final award. In September 1997, KS also served an attorney's lien on MA for $144,621.82. MA subsequently filed this interpleader action naming EDM, KS, and Gilbert as defendants and as adverse claimants to the funds that MA owed Gilbert under the final award. Both KS and EDM filed cross-claims against Gilbert for legal fees, and Gilbert filed cross-claims against the two law firms for legal malpractice. Gilbert and EDM subsequently agreed to a dismissal of all claims each party had against the other. On April 22, 1998, the

---

[1] 232 Ga. App. 91 (499 SE2d 731) (1998).

[2] "Attorneys at law shall have a lien on all papers and money of their clients in their possession for services rendered to them. They may retain the papers until the claims are satisfied and may apply the money to the satisfaction of the claims." OCGA § 15-19-14 (a).

trial court ordered MA to pay into the registry of the court the June 1998 and September 1998 quarterly payments due Gilbert under the final arbitration award. The court further ruled that upon payment of such sums that MA would be dismissed with prejudice from the interpleader action and that defendants would thereafter be enjoined from bringing suit against MA "with regard to the attorneys' liens or the sums deposited with this court pursuant to its various orders."[3]

## Case No. A00A2286

In Case No. A00A2286, Gilbert appeals from the trial court's June 9, 1998 order. In that order the trial court: (1) partially granted Gilbert's motion for summary judgment finding that EDM was not retained by Gilbert until after the arbitration award had been entered, but noted that EDM's breach of contract and quantum meruit cross-claims remain; (2) granted EDM's cross-motion for summary judgment for legal fees totaling $43,648.57 plus 12 percent annual interest; (3) found that MA was entitled to $2,065 in attorney fees and costs, ordering one-half to be paid by EDM and the remaining one-half to be paid by either Gilbert or KS upon resolution of the action; (4) ordered MA to make a deferred compensation payment into the registry of the court sufficient to satisfy the attorney's lien filed by KS with the remainder to be paid to Gilbert; and (5) extended the time for completion of discovery.

1. In his third and fourth enumerations of error, Gilbert argues that the court erred in finding that MA had a right to interplead and in failing to dismiss the interpleader action in its entirety. Gilbert argues that MA knew that (1) KS's claim was not legitimate and (2) EDM had not represented him at the time the final award was entered. The right to interpleader under OCGA § 9-11-22, however, depends upon the stakeholder's good faith fear of adverse claims.[4] That is *regardless of the merits of those claims* or what the stakeholder in good faith believes the merits to be.[5] Specifically, a stakeholder's offer to deposit disputed funds into the registry of the court in order to be discharged from potential litigation should not be denied merely because a claimant's case is weak or rests on tenuous grounds.[6] These enumerations are without merit.

2. In his first enumeration of error, Gilbert contends that the

---

[3] Gilbert appealed the April 1998 order, but the appeal was dismissed as Gilbert failed to follow the discretionary appeals procedures of OCGA § 5-6-34 (b).

[4] *Algernon Blair, Inc. v. Trust Co. of Ga. Bank of DeKalb*, 224 Ga. 118, 121 (160 SE2d 395) (1968); *Thompson v. Bank of the South*, 172 Ga. App. 579, 582 (2) (323 SE2d 877) (1984).

[5] *Algernon*, supra, 224 Ga. at 121.

[6] Id.

trial court erred in dismissing MA with prejudice from the interpleader action and in enjoining Gilbert from bringing any action against MA. He contends that there is no evidence to support either action. Contrary to this assertion the very case that Gilbert cites clearly explains that where "adverse claims on a fund have in fact been interpleaded, it is proper to dismiss the holder of the disputed fund as a party to the action, assuming that no further relief against the holder is being sought or necessary."[7] If no direct personal liability is being sought and the only claims are to the funds that the party holds, his capacity in the action is that of merely a stakeholder.[8] The stakeholder's successful invocation of the interpleader procedure serves to discharge him from the threat of potential liability to the adverse claimants of the disputed funds.[9] Clearly in this case it was proper to dismiss MA, the former holder of disputed funds against which EDM and KS had potentially adverse claims, as no further relief was sought against MA. Therefore, this enumeration is without merit.

3. Gilbert's argument that the court erred in refusing to hear his motion for summary judgment at the time it heard MA's motion to dismiss is without merit. Subject to the constitutional rights of the litigants, the presiding judge plainly retains discretionary control of its own calendar, and an appellate court will rightly hesitate to disturb the trial court's rulings on such matters unless it is clearly shown that this discretion was manifestly abused.[10] The transcript of that hearing clearly reveals that Gilbert's motion for summary judgment was on the calendar to be heard on June 3, 1998. We find no abuse of discretion in the court's refusal to hear Gilbert's summary judgment motion at the same time MA's motion was heard.

4. Gilbert's second enumeration of error contends the court erred in finding that MA had established a right to be reimbursed for attorney fees associated with bringing the interpleader action. Gilbert asserts this error prematurely as it has not yet been determined by the trial court whether it is Gilbert or KS that is to pay one-half of MA's attorney fees and costs. Consequently, this enumeration is not ripe for appellate consideration.[11]

5. Gilbert's sixth enumeration of error is deemed abandoned[12] as

---

[7] (Citation and punctuation omitted.) *Thompson,* supra, 172 Ga. App. at 582 (2).

[8] *Glisson v. Freeman,* 243 Ga. App. 92, 103 (1) (532 SE2d 442) (2000).

[9] Id.

[10] *Schwall v. McNeil,* 232 Ga. 679, 680 (208 SE2d 487) (1974); accord *Frost v. Pennington,* 6 Ga. App. 298 (65 SE 41) (1909); see generally OCGA § 15-1-3.

[11] See *Barger v. Garden Way,* 231 Ga. App. 723, 727 (5) (499 SE2d 737) (1998).

[12] *Caring Hands v. Dept. of Human Resources,* 222 Ga. App. 608, 609-610 (2) (475 SE2d 660) (1996).

he has not referenced the record[13] nor has he supported this claim of error by any citation to authority or reasoned argument.[14]

### Case No. A00A2284

In Case No. A00A2284, Gilbert appeals from the court's March 8, 1999 order. In that order the trial court granted partial summary judgment to KS on its cross-claims against Gilbert in the amount of $123,694.23 and denied Gilbert's motion on the same claim. The court also granted KS's motion for partial summary judgment on Gilbert's cross-claim of legal malpractice and denied Gilbert's motion for sanctions against KS.

6. Gilbert argues that the court "failed to consider, or erroneously considered" his objection to KS's attorney's lien. In particular he argues that because he presented evidence that the judgment upon which KS claimed a lien had been assigned to a third party, the lien did not comply with the statute. The attorney's lien statute is in derogation of the common law and should be strictly construed.[15] "[T]he statute will not be construed so as to apply to any factual situation not strictly within its wording."[16] The statute clearly states that upon decrees for *money*, attorneys "shall have a lien *superior to all liens except [for] tax liens*; and no person shall be at liberty to satisfy such an action, judgment or decree until the lien or claim of the attorney for his fees is fully satisfied."[17] The attorney's lien rule applies to existing creditors as the third-party assignee in this case.[18] Therefore, the *validity* of KS's lien is unaffected by the assignment.[19] In this regard, Gilbert's reliance on OCGA § 15-19-14 (c), concerning actions to recover real property, is misplaced.

Gilbert's argument that the lien was invalid because KS added improper fees also fails. "The inclusion of nonlienable items, easily separable from lienable items, does not defeat the entire lien."[20] The trial court made the specific finding that issues of fact remain with regard to the contested charges. And the disputed fees are obviously easily separable as the trial court granted summary judgment on KS's cross-claim reduced by the amount of these fees.

[13] Court of Appeals Rule 27 (c) (3) (i).

[14] Court of Appeals Rule 27 (c) (2).

[15] *May v. May*, 180 Ga. App. 581, 582 (349 SE2d 766) (1986); *Steele v. Cincinnati Ins. Co.*, 171 Ga. App. 499, 501 (3) (320 SE2d 203) (1984).

[16] (Citations omitted.) *Steele*, supra, 171 Ga. App. at 501 (3).

[17] (Emphasis supplied.) OCGA § 15-19-14 (b).

[18] See *Ramsey v. Sumner*, 211 Ga. App. 202, 204 (3) (438 SE2d 676) (1993).

[19] See *Johnson v. Giraud*, 191 Ga. 577, 583 (2) (13 SE2d 365) (1941).

[20] *Taverrite v. Lowe's of Franklin*, 166 Ga. App. 346, 348 (1) (304 SE2d 78) (1983) (physical precedent only), citing *Sears, Roebuck & Co. v. Superior Rigging &c. Co.*, 120 Ga. App. 412, 415 (4) (170 SE2d 721) (1969).

7. Gilbert enumerates as error the court's grant of summary judgment to KS on the issue of malpractice. Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[21] A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[22] To prove legal malpractice, Gilbert must establish three elements: (1) employment of the defendant attorney, (2) failure of the attorney to exercise ordinary care, skill, and diligence, and (3) that such negligence was the proximate cause of damage to the plaintiff.[23] In practice, this effectively requires proof that Gilbert would have prevailed on the merits of the original litigation.[24] In other words, Gilbert must show that but for KS's alleged error, the outcome would have been different.[25] The trial court concluded that KS met its burden of showing that Gilbert's allegations did not prove the second and third elements of this test.

(a) Gilbert first argues that the court gave no consideration to his claim of KS's breach of fiduciary duty. In particular, he claims that KS failed to deliver his entire file and refused to allow him to depose Michael Trotter. These arguments are without merit as they relate to KS's actions after their representation of Gilbert had ended and cannot be the basis of a claim for malpractice. Gilbert also lists examples in his brief of how KS allegedly breached its fiduciary duty, but these are one-sentence assertions, most without citation to the record and all without citation to authority or argument.

> Argument is defined as a reason given in proof or rebuttal, or a coherent series of reasons offered. Clearly, the central element in those definitions is reason. A mere statement of what occurred during the trial, and the contentions of the appellant, does not constitute an argument in support of such contentions. The failure to support the enumerated errors by citation of authority or argument constitutes an abandonment of such enumerated errors.[26]

Here, Gilbert has stated what he *feels* the result *should* be but has not supported the reason why the trial court's conclusions that KS breached no duty or caused no harm should be set aside. Conse-

---

[21] OCGA § 9-11-56 (c).

[22] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

[23] *Walker v. Burnett*, 241 Ga. App. 105, 108 (526 SE2d 109) (1999).

[24] *Houston v. Surrett*, 222 Ga. App. 207, 209 (2) (474 SE2d 39) (1996).

[25] *Szurovy v. Olderman*, 243 Ga. App. 449, 451-452 (530 SE2d 783) (2000).

[26] (Citations and punctuation omitted.) *Caring Hands*, supra, 222 Ga. App. at 610 (2).

quently, these grounds are deemed abandoned.[27]

(b) Michael Elkourie, chosen to represent Gilbert's interests and to investigate the finances of Gilbert & Montlick, P.C., was one of three arbitrators. Both Gilbert and MA chose one interested arbitrator each, and those two selected the third arbitrator designated as a "neutral." Prior to the arbitration, Elkourie's position was changed to that of a witness. MA's chosen arbitrator also stepped down, and the hearing proceeded with only one arbitrator, Sidney Smith. Gilbert claims that he was not properly advised of the change of Elkourie's status from arbitrator to witness and that he was charged excessive fees for Elkourie as arbitrator even though he eventually did not act in that capacity. Susan Cahoon, a KS partner who assisted in the representation of Gilbert, deposed that it was the neutral arbitrator who first suggested that Elkourie change from arbitrator to witness; that she discussed with Gilbert the practicality of Elkourie's role as a witness since the neutral arbitrator alone would make the final decision, anyway; and that Gilbert consented to this tactic. Gilbert himself conceded that although he was initially opposed to the idea, after discussion with his counsel he accepted their recommendation. Not only did Gilbert consent to the change in Elkourie's status, "[t]here can be no liability for acts and omissions by an attorney in the conduct of litigation which are based on an honest exercise of professional judgment."[28] Gilbert's counsel clearly used professional judgment in deciding that Elkourie would better serve Gilbert as a witness. Moreover, Smith, the sole arbitrator, deposed that the outcome of the arbitration would not have been different with the addition of the two other arbitrators.

Gilbert also argues that he was not told about a conference between KS, MA, and arbitrator Smith concerning the issue of Elkourie's status. He has not shown, however, how the outcome of the arbitration ruling would have been different if he had been told about the conference.

(c) Gilbert argues that KS's failure to discover an "off-book" asset (worth approximately $900,000) of Gilbert & Montlick, P.C. constituted malpractice. After the final award was entered, Elkourie discovered a substantial asset in the form of advances to clients that the former Gilbert & Montlick, P.C. had not listed on its financial statement. But in Gilbert's motion to vacate the arbitration ruling, he conceded that neither he nor his representatives had reason to know or suspect that the true financial position of the firm had been concealed. Therefore, assuming that it was within KS's range of respon-

---

[27] See id.

[28] (Citation and punctuation omitted.) *Allen Decorating v. Oxendine*, 225 Ga. App. 84, 89 (2) (483 SE2d 298) (1997).

sibilities in representing Gilbert to locate Gilbert & Montlick, P.C.'s assets, it cannot be said that KS was negligent in failing to discover the hidden "off-book" assets that were not readily discoverable and of which Gilbert himself had no knowledge. The court did not err in granting summary judgment to KS on Gilbert's claim of malpractice.

8. Gilbert enumerates two errors involving discovery. Trial judges have broad discretion in controlling discovery, including the imposition of sanctions, and appellate courts will not reverse a trial court's decision on such matters unless there has been a clear abuse of discretion.[29]

(a) Gilbert argues that the court erred in denying him the right to depose Trotter, a KS attorney. At a hearing on motions for summary judgment, Gilbert argued that even though Trotter billed him for only about an hour's worth of services, he wished to depose him to ask him questions about a book Trotter had authored on attorney fees. Gilbert filed a notice to take deposition and subpoena for Trotter on July 1, 1998, for the deposition to take place on July 8, 1998, two days before the end of discovery. The deposition did not take place, and the court later ruled that because Trotter billed Gilbert for only 1.3 hours, it was not necessary to keep discovery open in order to take his deposition. As there was some evidence to support the trial court's refusal to allow Trotter to be deposed, we see no abuse of discretion in the court's ruling.[30]

(b) Finally, Gilbert argues that the court erred in denying his motion for sanctions for the failure of KS to produce certain documents as ordered by the trial court. At the November 10, 1998 hearing on KS's and Gilbert's motions for summary judgment, Gilbert argued that he was denied access to information regarding his file, specifically, correspondence mentioned in a letter to Gilbert from Mara McRae, a KS partner. The court ordered that KS provide Gilbert the correspondence that was referred to in McRae's letter by December 1, 1998.[31] On February 13, 1999, Gilbert filed a motion for sanctions. Without a hearing or a response from KS, the court denied Gilbert's motion for sanctions finding that "further delving into KS's billing entries is not necessary." Here, as there is evidence of at least an attempt by KS to provide the information requested by Gilbert, and because there was no finding of a wilful or intentional failure to comply with the court's order,[32] we find no clear abuse of the court's

---

[29] *Butler v. Biven Software*, 238 Ga. App. 525, 527 (2) (522 SE2d 1) (1999); *Freeman v. Ripley*, 177 Ga. App. 522, 523 (339 SE2d 795) (1986).

[30] See OCGA § 9-11-26 (c) (1).

[31] This date was later changed to February 1, 1999.

[32] See *Loftin v. Gulf Contracting Co.*, 224 Ga. App. 210, 214-215 (3) (480 SE2d 604) (1997) (drastic sanctions are appropriate for wilful or conscious disregard of an order compelling discovery).

discretion in failing to impose the drastic sanctions requested by Gilbert (to strike KS's claim for attorney fees and to strike KS's defense to Gilbert's malpractice claims).[33] Thus, the court did not err in its ruling on these discovery issues.

9. Gilbert's second enumeration is deemed abandoned as it is not supported by citation to authority but is simply a lengthy recitation of the same arguments in other enumerations and Gilbert's contentions without any reasoned argument as to why the partial grant of summary judgment to KS's claim for attorney fees (in an amount omitting all specifically contested charges) is erroneous.[34]

*Judgments affirmed. Pope, P. J., and Mikell, J., concur.*

DECIDED MARCH 9, 2001 — 

*Fred A. Gilbert*, pro se.

*Nelson, Mullins, Riley & Scarborough, Kenneth L. Millwood, Kilpatrick Stockton, Craig E. Bertschi*, for appellee.

---

[33] Compare *Porter v. Buckeye Cellulose Corp.*, 189 Ga. App. 818, 822-823 (4) (377 SE2d 901) (1989) (physical precedent only).
[34] Court of Appeals Rule 27 (c) (2).
[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).