**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**November 14, 2012**

# In the Court of Appeals of Georgia

A12A0375. NASH et al. v. UNITED BANK-THOMASTON.

RAY, Judge.

When a dispute arose between Richard Nash and James Edwards, Jr. over who was authorized to access funds in an account held in the name of Christ Temple Ministries, United Bank - Thomaston ("United Bank") filed an interpleader action in the Superior Court of Upson County. Nash and Christ Temple Ministries filed an answer to the petition contending that interpleader was not the appropriate method for resolving the dispute, and Christ Temple Ministries asserted a counterclaim against United Bank for conversion of the funds. On the parties' cross-motions for summary judgment, the trial court found that interpleader was appropriate and awarded attorney fees to United Bank pursuant to OCGA § 23-3-90 (a) (b).

On appeal,[1] Nash and Christ Temple Ministries contend that the trial court erred in granting United Bank's petition for interpleader. Specifically, they argue that the requirements for interpleader were not met, and thus the award of attorney fees was unauthorized; that the trial court substituted its judgment for that of the church congregation in a church dispute; and that the existence of genuine issues of material fact regarding the claim for conversion precludes interpleader. For the following reasons, we affirm.

Properly viewed,[2] the evidence shows that Christ Temple Ministries is an unincorporated church. On November 18, 2006, James Edwards, Jr., as "Pastor & Founder," opened a bank account in the name of Christ Temple Ministries with United Bank. At that time, Edwards was the sole signatory on the account. On November 22, 2006, Edwards and another church member, Latrina Pennamon, submitted a resolution on behalf of Christ Temple Ministries to United Bank adding

---

[1] The appeal was transferred to this Court from the Supreme Court of Georgia because "the propriety of the grant of equitable interpleader is ancillary to the underlying legal issues involved in the interpretation of the relevant bank deposit agreement" between the parties.

[2] On appeal from the grant of a motion for summary judgment, we apply a de novo standard of review, viewing the evidence and all reasonable inferences and conclusions drawn from it in the light most favorable to the nonmovant. *Jenkins v. Wachovia Bank, Nat. Assn.*, 309 Ga. App. 562, 562 (711 SE2d 80) (2011).

Nash as an authorized signatory on the account. Thereafter, any withdrawal or transfer of the funds on deposit required the signatures of both Edwards and Nash.

On or about September 9, 2009, Nash and Pennamon sent a letter on behalf of Christ Temple Ministries to United Bank requesting that Edwards be removed as a signatory on the account and replaced with another church member. On or about September 30, 2009, Edwards sent United Bank a letter stating that he did not authorize his removal as a signatory and requesting that his name remain as a required signatory on the account. Edwards further stated that the funds in the account were in dispute.

Edwards, Nash, and Pennamon disagree as to who is the proper governing authority for the church.[3] Edwards asserts that he is still the pastor of Christ Temple Ministries even though he is not currently pastoring Nash and some other members of the congregation and that he is the governing body of Christ Temple Ministries with the authority to control its funds. Edwards also claims that the funds were used primarily for the purpose of paying back a loan that he and his wife obtained to buy land for Christ Temple Ministries. Nash contends that Christ Temple Ministries is a

---

[3] There is no evidence in the record of any by-laws, charters, articles or other governing instruments for Christ Temple Ministries.

congregational church governed by a majority of its members, and that the decision to change the signatories on the account had been approved by the majority of the church members.

Upon receiving notice of the dispute as to who should have control over the funds in the account, United Bank filed an interpleader action pursuant to its policy regarding account disputes. The relevant portion of the Deposit Account Disclosures ("deposit agreement") for the account at issue provides as follows:

> **3. Claims and Disputes Concerning your Account.** If another person or entity makes a claim against the funds in your account, or *if we have reason to believe there is or may be a dispute over* matters such as the ownership of the account or *the authority to withdraw funds*, we may, in our sole discretion, (1) continue to rely on current signature cards, resolutions or other account documents, (2) freeze all or part of the funds until the dispute is resolved to our satisfaction, or (3) pay the funds into an appropriate court of law for resolution.[4]

OCGA § 23-3-90 (a) provides that "[w]henever a person is possessed of property or funds or owes a debt or duty, to which more than one person lays claim of such a character as to render it doubtful or dangerous for the holder to act, he may

_____

[4] (Emphasis supplied.)

apply to equity to compel the claimants to interplead." The four basic requirements

for obtaining relief under Georgia's equitable interpleader statute[5] are as follows:

> (1) The same thing, debt, or duty must be claimed by both or all of the
> parties against whom the relief is demanded;
>  (2) all their adverse titles or claims must be dependent, or derived, from
> a common source;
> (3) the plaintiff must not have or claim any interest in the subject-matter;
> [and]
> (4) the plaintiff must have incurred no independent liability to either of
> the claimants, but must stand indifferent between them merely as a
> stakeholder.[6]

In its ruling on summary judgment, the trial court found that United Bank

satisfied all of the requirements for interpleader.

1. Nash and Christ Temple Ministries contend that the trial court erred in

granting interpleader because United Bank was not an "indifferent stakeholder"

---

[5] OCGA § 23-3-90.

[6] (Citations and punctuation omitted.) *Almand v. Reese*, 209 Ga. 138, 142 (2) (71 SE2d 223) (1952). See also *Gilbert v. Montlick & Associates, P.C.*, 248 Ga. App. 535, 537 (2) (546 SE2d 895) (2001) (it is appropriate to dismiss holder of disputed funds in interpleader when "no further relief against the holder is being sought or necessary") (punctuation and footnote omitted).

because it had incurred an independent liability for conversion by withholding the funds of the church during the dispute and instituting this interpleader action. This argument is without merit.

Once United Bank received notice of the conflicting claims over access and control of the funds held in the deposit account, it was authorized by the express terms of the deposit agreement to, in its sole discretion, decide whether to continue to rely on the current signature card, to freeze the funds, or to pay the funds into court for resolution.

Under Georgia law, "[c]onversion consists of an *unauthorized* assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an *unauthorized* appropriation."[7] Conversion has also been defined as "[a]ny distinct act of dominion *wrongfully* asserted over another's

---

[7] (Citation omitted; emphasis supplied.) *Trey Inman & Assocs. v. Bank of America, N.A.*, 306 Ga. App. 451, 457 (4) (702 SE2d 711) (2010) (to establish conversion, a party must show title to the property or right to possession, actual possession in other party, a demand for return of the property, and a refusal by the other party to return the property).

6

property in denial of his right or inconsistent with it."[8] Here, United Bank's actions were not unauthorized, as they were permitted under the express terms of the deposit agreement. Therefore, no conversion has occurred.

Furthermore, because the provisions for interpleader are intended to be remedial in nature, they are liberally construed in order to effectuate their utilitarian purposes.[9] "The holder of contested funds need not decide at his peril either close questions of fact or of law to entitle him to have the parties at interest set up their claims for determination."[10]

> The right to interpleader . . . should depend merely upon the stakeholder's good-faith fear of adverse claims, regardless of the merits of those claims or what the stakeholder bona fide believes the merits to be. The complainant's offer to deposit the disputed fund into the registry of the court and to be discharged from the litigation should not be denied merely because the claim advanced by one of the claimants is

---

[8] (Citation and punctuation omitted; emphasis supplied.) *Farm Credit of Northwest Florida, ACA v. Easom Peanut Co.*, 312 Ga. App. 374, 381 (3) (a) (718 SE2d 590) (2011).

[9] *Algernon Blair, Inc. v. Trust Co. of Ga. Bank of DeKalb*, 224 Ga. 118, 120 (160 SE2d 395) (1968). Accord *American Gen. Life & Accident Ins. Co. v. Vance*, 297 Ga. App. 677, 678 (678 SE2d 135) (2009).

[10] (Citation and punctuation omitted.) *Evans v. Cushing Properties*, 197 Ga. App. 380, 381 (2) (a) (398 SE2d 306) (1990).

7

weak or rests on tenuous grounds. Indeed, it will normally be the case that the assertions of one or more of the claimants will be lacking in merit, but that fact alone does not relieve the stakeholder of the substantial risk of vexatious litigation.[11]

Because United Bank was authorized to file a petition for interpleader based upon the terms of the deposit agreement and under Georgia law, we find that the trial court did not err in granting United Bank's petition.[12]

2. In their remaining enumerations of error, Nash and Christ Temple Ministries contend that the trial court erred when it granted interpleader because the court, by agreeing to adjudicate the dispute over the funds, was substituting its judgment for that of the church. Specifically, they argue that Nash represented the majority of the membership of Christ Temple Ministries when he requested United Bank to change the signatures on the bank account, and that the trial court was bound by this decision.[13] Nash and Christ Temple Ministries further contend that the existence of

---

[11] *Algernon Blair, Inc.*, supra.

[12] In their second enumeration of error, Nash and Christ Temple Ministries claim that the trial court erred in awarding United Bank attorney fees pursuant to OCGA § 23-3-90 (b) because United Bank failed to satisfy the threshold requirements for interpleader. In light of our holding in Division 1, this enumeration is moot.

[13] See generally *Pritchett v. Wesleyan Pentecostal Church at Holly Springs*, 265 Ga. App. 565, 567 (2) (594 SE2d 750) (2004) ("Georgia law recognizes two

8

genuine issues of material fact regarding the conversion claim preclude the trial court's grant of summary judgment in favor of United Bank. Based on our determination in Division 1, and for the reasons set out below, these enumerations fail.

In its order, the trial court noted that "[b]oth parties equally dispute who is authorized to control transfer of the funds" and that "[s]everal inconsistencies as to these facts pepper the affidavits, depositions, and arguments presented to the [c]ourt." Accordingly, the trial court determined that interpleader was an appropriate method for United Bank to resolve the dispute. Although Edwards contends he is the pastor and governing body of Christ Temple Ministries with the authority to control its funds, neither Edwards nor Nash have presented any evidence of Christ Temple Ministries' governing church law. We find that interpleader is an appropriate method to resolve the dispute over control of the funds because the dispute is secular and not

basic types of church government, congregational and hierarchical, although some decisions have also recognized a hybrid of these two") (citation omitted); *Crumbley v. Solomon*, 243 Ga. 343, 343 (254 SE2d 330) (1978) ("If the church government is congregational, then a majority of its members control its decisions and local church property"); *Jones v. Wolf*, 244 Ga. 388, 388 (2) (266 SE2d 84) (1979) (In resolving church disputes, Georgia has adopted a "presumptive rule of majority representation, defeasible upon a showing that the identity of the local church is to be determined by some other means") (citation and punctuation omitted).

9

of a religious nature, and "the resolution of the dispute does not necessitate an impermissible intrusion or excessive entanglement into ecclesiastical matters."[14]

*Judgment affirmed. Miller, P. J., and Branch, J., concur.*

---

[14] *First Born Church of the Living God, Inc. v. Bank South, N.A.*, 221 Ga. App. 739, 740 (472 SE2d 469) (1996) (interpleader was appropriate method to resolve dispute between church members regarding access to funds in a bank account and trial court did not impermissibly intrude in religious matters when deciding the issue).