68546. CENTRAL ANESTHESIA ASSOCIATES P. C. et al.
v. WORTHY et al.
68547. CASTRO v. WORTHY et al.
68548. MOORHEAD v. WORTHY et al.
68549. EXECUTIVE COMMITTEE OF BAPTIST CONVENTION
OF GEORGIA v. WORTHY et al.
(325 SE2d 819)

BEASLEY, Judge.

This is a medical malpractice case, and at this stage, the issues swirl around that first element of negligence, the legal duties of the defendants towards Mr. and Mrs. Worthy.

In September 1981 Mrs. Worthy gave birth to a child at Georgia Baptist Medical Center (hospital). The following day she underwent tubal ligation surgery, a form of sterilization, which was conducted by Dr. Moorhead, an obstetrician/gynecologist, assisted by Dr. Moore, an intern and employee of the hospital. Anesthesia services for the operation were provided by Central Anesthesia Associates P. C., (CAA), a professional corporation of eight physicians.[1] The anesthesia was administered to Mrs. Worthy by nurse Castro, a registered professional nurse and senior student nurse anesthetist enrolled in the hospital's school of anesthesia for nurses training to become certified registered nurse anesthetists (CRNA). Castro was supervised by Krencik, a physician's assistant specializing in anesthesiology and an employee of CAA. As the result of claimed improper anesthesia procedures, Mrs. Worthy went into cardiac arrest and suffered severe brain damage.

Mr. Worthy, individually and as guardian of his wife, brought this action against CAA, Drs. Mani-Murugiah, Cortes, and Shantha; their employee Krencik; nurse Castro; Drs. Moorhead and Moore; and the hospital. After extensive discovery, the Worthys moved for partial summary judgment on the issue of negligence per se for violation of OCGA § 43-26-9 (b). Nurse Castro, Drs. Moorhead and Moore, and the hospital also moved for summary judgment. The trial court granted the Worthys' motion for partial summary judgment on the issue of negligence per se against all defendants except Moore, reserving the issues of proximate cause and damages for the jury. It granted Moore's motion for summary judgment. It denied Castro's (68547), Moorhead's (68548) and the hospital's (68549) motions for summary judgment. All defendants except Moore, who is no longer an active party, appealed the grant of partial summary judgment to the Worthys. Castro, Moorhead and the hospital also appealed the denial of their summary judgment motions. *Held*:

The first issue involves the grant of partial summary judgment to the Worthys against all remaining defendants on the issue of negligence. The court concluded that violation of OCGA § 43-26-9 constituted negligence per se as to each of these defendants and that the only issues for the jury to determine were those involving the elements of proximate cause and damages. That is, it concluded that all defendants had a legal duty imposed by the Code provision, that each had breached it, and that plaintiffs had only to prove that the breach was the proximate cause of Mrs. Worthy's condition and what the damages were.

Appellants argue that the statute pertains only to the conduct of

---

[1] Three of the eight physicians, Mani-Murugiah, Cortes and Shantha, are individual defendant-appellants.

certified registered nurse anesthetists (CRNAs), and because Castro was not a CRNA, OCGA § 43-26-9 cannot be the basis for a finding of negligence per se against any of them. This cannot be so because the law prohibits the practice of medicine by anyone not properly licensed to do so. OCGA §§ 43-34-20, 43-34-26, 43-34-27, 43-34-43, 43-34-46. "By statute, the physician is the only one empowered to practice medicine." *Cobb County &c. Hosp. Auth. v. Prince*, 242 Ga. 139, 144 (249 SE2d 581) (1978). OCGA § 43-26-9 makes an exception in the specialty of anesthesiology and allows a nurse who meets the qualifications of the statute to administer anesthesia under particular supervision. It defies logic to say that the RPN was *not* a CRNA and thus was not required to abide by the statute's directive. The authority she had could come from no other source.

OCGA § 43-26-9 (a) defines and establishes the minimum qualifications for "certified registered nurse anesthetist" in this state: "As used in this Code section, the term 'certified registered nurse anesthetist' means any person who is authorized by this article to practice nursing as a registered professional nurse in this state who has successfully completed the education program of a school of nursing approved by the board in accordance with this article or has successfully completed an educational program outside the state or the United States which meets criteria similar to and not less stringent than those established by the board, who has successfully completed the educational program of a school for nurse anesthetists accredited by the American Association of Nurse Anesthetists, and who either is certified as a registered nurse anesthetist by the American Association of Nurse Anesthetists or has an application for certification pending within the American Association of Nurse Anesthetists." OCGA § 43-26-9 (b) provides: "In any case where it is lawful for a duly licensed physician practicing medicine under the laws of this state to administer anesthesia, such anesthesia may also lawfully be administered by a certified registered nurse anesthetist, provided that such anesthesia is administered under the direction and responsibility of a duly licensed physician with training or experience in anesthesia."

These provisions are part of that chapter of our Code which regulates registered and licensed practical nurses. OCGA Title 43, Chapter 26. Section 10, immediately following the CRNA section focused on here, declares that the practice of nursing as a registered professional nurse (RPN) or as a licensed undergraduate nurse, without license, is a public nuisance and may be enjoined. CRNAs, of course, must be RPNs. Section 12 provides that it is a misdemeanor for any person, corporation, or association to willfully violate this chapter. OCGA § 43-26-12 (7).

It is well-settled that Georgia law allows the adoption of a statute as a standard of conduct so that its violation becomes negligence per

se. *Louisville & Nashville R. Co. v. Hames*, 135 Ga. 67 (68 SE 805) (1910). The standard of review to determine whether the violation of a statute is negligence per se is two-fold. As this court in *Potts v. Fidelity Fruit &c. Co.*, 165 Ga. App. 546, 547 (301 SE2d 903) (1983) explained: "In determining whether the violation of a statute or ordinance is negligence *per se* as to a particular person, it is necessary to examine the purposes of the legislation and decide (1) whether the injured person falls within the class of persons it was intended to protect and (2) whether the harm complained of was the harm it was intended to guard against. (cits.)"

Another way of putting it was stated earlier in *Etheridge v. Guest*, 63 Ga. App. 637, 640 (12 SE2d 483) (1940): "Before an act can be considered as negligence it must be in violation of some duty owing, under the circumstances, by the person committing the act to another person, and in its nature must be capable of having a causal connection between it and the damages or injury inflicted upon the other person. An act prohibited by a penal statute, and which might be negligence as a matter of law, is not negligence unless its commission is in violation of some duty owing, under the circumstances, by the person committing the act to another person, and is capable of having a causal connection with the injury inflicted."

The purpose of OCGA § 43-26-9 is to protect patients from the dangers of improperly administered anesthesia by those unqualified by a lack of what public policy regards as minimum education in the field, and by a lack of specified supervision. Mrs. Worthy is one such patient the statute was intended to protect. So too is the harm incurred by Mrs. Worthy, the harm the statute was intended to guard against. The statute set threshold qualifications which had to be met before a person would be permitted under the law to apply anesthesia. These qualifications do not establish how the anesthesia is to be administered, or what methods or instruments may be used, but rather who may do it with whose supervision. Thus it prohibits anyone not meeting these qualifications from performing, and it further prohibits even a statutorily qualified person from performing without prescribed supervision.

For a violation of the statute to be negligence per se, the violation "must be capable of having a causal connection between it and the damage or injury inflicted upon the other person." *Etheridge v. Guest*, supra. This refers not to the proximate cause element of the negligence action, which the Worthys still must prove by a preponderance of the evidence, but rather to the character of the legal duty involved. Is this statutory duty one which, if breached, is capable of producing injury to an anesthetized person?

It seems clear that it is. The unauthorized and unsupervised administration of anesthesia could indeed cause injury to the patient.

Had the statute been followed, and had the anesthesia been administered by a CRNA under an anesthesia-qualified physician's supervision, it is possible that no injury or at least lesser injury would have resulted to Mrs. Worthy. Thus, the violation of OCGA § 43-26-9 constitutes negligence per se.[2]

The next question is, who had the duty imposed by the statute which prohibited the administration of anesthesia by a non-physician unless the person was a CRNA and supervised by an anesthesiology-qualified physician?

Certainly the nurse Castro had a duty not to practice medicine beyond what the law allowed. Her duty to comply with the law as a student did not end at the point she was assigned by her supervisors to attend this patient as part of her schooling.

Also the physician's assistant Krencik had a duty not to undertake and supervise her performance, as he was not authorized under the statute to do so. Only "a duly licensed physician with training or experience in anesthesia" could do so. The physician assistant's authority is circumscribed by law, and nowhere does it allow the activity outside of the prohibition in OCGA § 43-26-9. To begin with, he is to work under the personal direction or supervision of the licensed physician who will be responsible for his performance. OCGA §§ 43-34-102 (4) and 43-34-103. Additionally, he is to perform only those tasks in his job description plus those performed under the direct supervision and in the presence of the physician utilizing him, OCGA § 43-34-105. So he was not authorized by law to substitute himself for the physician required by OCGA § 43-26-9.

The corporation which provided anesthesia services in the hospital and which operated the school that nurse Castro was enrolled in, and which controlled her assignments and those of its employee Krencik, and on whose assignment they were at the time, had a duty not to assign students to administer anesthesia and not to assign a non-physician to supervise her. The duty also devolved upon the physicians who were individually sued here, since each had a position of responsibility with respect to her anesthetizing Mrs. Worthy that day. All denied involvement, showing that no anesthesiologist was in charge. Their breach was one of omission rather than commission. Even if any of them had authorized her activity, negligence per se would be laid at their doorstep because no student was permitted by law to perform the task.

As to the hospital, while it did not control the operation of the

---

[2] We are not overruling *Andrews v. Lofton*, 80 Ga. App. 723 (57 SE2d 338) (1950), because the statute under consideration is not a licensing statute. The Attorney General has agreed. See 1977 Op. Att'y Gen. No. 77-14. It is a sine qua non statute, aimed at protecting those who must succumb to anesthesia.

school, it contracted for CAA to do so and participated by giving the school its name, allowing it to operate on its premises, and providing funding, supplies, space, graduation paraphernalia, and services. By its contract it contemplated the use of students in medical procedures. Nowhere in these agreements is there any specification of or limitation on what clinical use could be made of the students in the administration of anesthesia. It did, however, expressly state that the hospital would not be entitled to any fees "attributable to services rendered to patients by students under supervision of CAA personnel." Moreover, it is of great import that the hospital's surgical consent form, to be signed by the patient, stated that anesthesia would be administered under the supervision of an anesthesiologist. The hospital had a duty not to permit violations of OCGA § 43-26-9 because it provided, among other things, the physical resources necessary for such activity to take place. There is evidence, in addition, that it was common practice for the students to administer anesthesia. "Part of the responsibilities of a hospital . . . is to insure that an adequate, competent medical staff serves the patients within the hospital." *Cobb County &c Hosp. Auth. v. Prince*, supra.

Dr. Moorhead claims that he was not responsible for the anesthesia in this case. He was the surgeon in charge of the tubal ligation on Mrs. Worthy. His duties are inherent in the doctor-patient relationship. *Hawkins v. Greenberg*, 166 Ga. App. 574 (304 SE2d 922) (1983). Whether he had a duty to assure that those members on his team were minimally qualified to assist is not answered by the evidence thus far in the record. Indeed, he may have treated Mrs. Worthy with the requisite degree of care and skill in performing the surgery, as he established in his unrebutted affidavit. *Jackson v. Gershon*, 165 Ga. App. 492, 493 (300 SE2d 335) (1983).

However, there is no expert evidence one way or the other with respect to an obligation of a surgeon directing surgery to see that those who assist him and provide services to his patient meet the minimum qualifications of the law authorizing the practice of medicine. Whether the standard of care would require the surgeon to inquire or satisfy himself at least that the anesthetist was an anesthesiologist or a CRNA has not been determined by expert opinion. As held in *Self v. Executive Comm. of Ga. Baptist Convention*, 245 Ga. 548 (266 SE2d 168) (1980), it is essential that competent evidence be presented as to the reasonableness and skill of the practitioner's conduct. Except in clear and palpable cases, which we do not have here, expert testimony is necessary to establish the parameters of acceptable professional conduct, a significant deviation from which would constitute malpractice.

No one, including Dr. Moorhead, testified that according to medical practice standards, the surgeon could assume that the assembled

team was composed of legally qualified people or in particular, that the anesthetist was an anesthesiologist or CRNA. It has been said in other contexts that the surgeon in the operating room is responsible for those over whom he exercises immediate personal supervision and control. *Swindell v. St. Joseph's Hosp.*, 161 Ga. App. 290 (1) (291 SE2d 1) (1982); *Miller v. Atkins*, 142 Ga. App. 618 (236 SE2d 838) (1977), cert. denied. A physician may be negligent when he utilizes attendants whom he has reason to know are incompetent by virtue of the fact that they are untrained. *Irwin v. Arrendale*, 117 Ga. App. 1, 6 (7) (159 SE2d 719) (1967).

Whether the surgeon in this case had control over who anesthetized his patient is not shown by the record. Did he have a right to rely on others for assembling a minimally-qualified team? Or would expert testimony on the degree of care and skill ordinarily employed by the profession generally under similar conditions and like surrounding circumstances dictate otherwise? As to this facet of the surgeon's relationship with his patient, the evidence is thus far silent. See *Johnson v. Myers*, 118 Ga. App. 773 (165 SE2d 739) (1968); *Killingsworth v. Poon*, 167 Ga. App. 653 (307 SE2d 123) (1983).

Finding negligence *per se* for violation of this statute does not end the matter. The duties of the participants here embraced much more than merely compliance with the law-required qualifications of one who may anesthetize. There were other duties as well, the breach of which may have proximately caused or contributed to the proximate cause of the injury to Mrs. Worthy. OCGA § 51-1-27. "The degree of care and skill required is that which, under similar conditions and like surrounding circumstances, is ordinarily employed by the profession generally." *Blount v. Moore*, 159 Ga. App. 80, 81 (282 SE2d 720) (1981). The standard here would of course have to be that applied to statutorily-qualified persons, because others are forbidden to administer anesthesia.

Plaintiffs allege that the proper standard of treatment and care was additionally not met, with respect to the method chosen, the procedure used, the supervision by a physician's assistant, the action taken when trouble developed, and the content of instruction and training of the student nurse anesthetist. So for example, even if the nurse actually had all the qualifications of a CRNA, even though she had completed only one year of the two-year course, she would have had to perform the anesthetization in a skillful way and meet the medical standard for doing so. Those responsible for the proper application of the anesthesia and for the selection of the method would be liable for deviation therefrom.

The point is that if the failure to abide by the threshold standards of OCGA § 43-26-9 was not in fact the proximate cause of the

injury,[3] the violation of other legal duties claimed by plaintiffs may have been. These matters of fact are in dispute. Thus, the grant of partial summary judgment on the issue of negligence *per se* was correct. There was negligence *per se* as it related to the Code section focused on. There also may have been negligence with respect to the other duties claimed, as testified to by plaintiff's medical expert Dr. Patton. Those matters are in dispute and must be left to the jury to determine.

Therefore, we affirm the trial court's granting the motion for partial summary judgment insofar as it establishes that the violation of OCGA § 43-26-9 is negligence per se, except as to Dr. Moorhead. Plaintiffs have not shown without dispute that he had a legal duty in this regard. We reverse the grant of partial summary judgment against him. We affirm the denials of summary judgment made on behalf of all defendants-appellants.

*Judgment affirmed in Case Nos. 68546, 68547, and 68549; judgment affirmed in part and reversed in part in Case No. 68548. Birdsong, P. J., and Carley, J., concur.*

DECIDED DECEMBER 5, 1984 —
REHEARINGS DENIED DECEMBER 18, 1984 AND DECEMBER 20, 1984 —

*Sidney F. Wheeler, Ben S. Williams, K. Marc Barre, Jr.*, for appellants (case no. 68546).

*David A. Handley, Hugh M. Worsham, Jr.*, for appellant (case no. 68547).

*George W. Hart, Lawrie E. Demorest*, for appellant (case no. 68548).

*Daryll Love, John A. Gilleland*, for appellant (case no. 68549).

*Gerald F. Handley, Gary Hill*, for appellees.

---

[3] Even though the violation of the statute was capable of causing the injury.