## A01A1339. BROWN v. BELINFANTE et al.
### (557 SE2d 399)

PHIPPS, Judge.

Gail Brown sued Louis S. Belinfante, D.D.S. and Atlanta Orthofacial Surgicenter, LLC after Belinfante performed several elective cosmetic procedures on her: a rhytidectomy (facelift), a genioplasty (chin augmentation), a four-lid blepharoplasty (eyelid revision), and a dermabrasion (facial laser resurfacing). Belinfante is not a physician. He is licensed to practice dentistry in Georgia and was employed by the Surgicenter. Brown claims that after the cosmetic procedures, she could not close her eyes completely, developed chronic bilateral eye infections, and required remedial corrective surgery. She also claims that the surgery on her chin caused a speech impediment and facial asymmetry. Among other things, Brown alleged that Belinfante's performance of the cosmetic procedures constituted negligence per se because he exceeded the scope of the practice of dentistry, violating OCGA § 43-11-1 et seq. (referred to by the parties and the trial court as the "Dental Practice Act") and Rule 150-8-.01 (h) promulgated thereunder by the Georgia Board of Dentistry (Board).

Belinfante denied practicing outside the scope of dentistry. In his deposition, he stated, "I'm an oral and maxillofacial surgeon who is a dentist, and our specialty performs those kinds of operations." The trial court granted the defendants partial summary judgment on the negligence per se claim, relying on *Cardio TVP Surgical Assoc. v. Gillis*[1] to conclude that "the question of whether or not Defendant Dr. Belinfante was practicing within the scope of the Georgia Dental Practice Act is not an issue to be determined by the jury sitting as

---

[16] See id.
[1] 272 Ga. 404, 406 (1) (528 SE2d 785) (2000).

the trier of fact." Brown appeals that ruling.

We find that Belinfante's acts did not give rise to a negligence per se claim based upon the Board rule. But in performing the elective cosmetic procedures, he violated OCGA § 43-11-17 by exceeding the statutory limits of the scope of dentistry. Thus, we conclude that Belinfante committed negligence per se, and we reverse.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[2] A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[3]

1. Brown claims that Belinfante committed negligence per se because he violated the Dental Practice Act by performing cosmetic procedures that were not authorized by OCGA § 43-11-17. In full, OCGA § 43-11-17 provides:

> (a) Except as expressly provided in this chapter, any person who performs any of the following procedures, operations, or services shall be regarded as practicing dentistry within the meaning of this chapter: (1) Operates or performs part of any dental operation of any kind upon the human oral cavity, teeth, gingiva, alveolar process, maxilla, mandible or associated structures, or associated contiguous masticatory structures for the treatment of diseases or lesions of such structures; (2) Extracts teeth or attempts to correct a malposition thereof; (3) Fills or crowns a human tooth or teeth; (4) Does any dental operation whatsoever on the human oral cavity, teeth, gingiva, alveolar process, maxilla, mandible or associated structures, or associated contiguous masticatory structures; (5) Examines any human oral cavity, teeth, gingiva, alveolar process, maxilla, mandible or associated structures, or associated contiguous masticatory structures or takes an impression thereof for the purpose of diagnosing, treating, or operating upon the same; (6) Makes, repairs, adjusts, or relines appliances usable on teeth or as teeth unless such appliances, repairs, adjustment, or relines are ordered by and returned to a licensed dentist; (7) Undertakes to do or perform any physical evaluation of a patient in his or her office or in a hospital, clinic, or other medical or dental facility prior to, incident to, and appropriate to the performance of any dental services or oral or maxillofacial

---

[2] OCGA § 9-11-56 (c).
[3] *Gilbert v. Montlick & Assoc.*, 248 Ga. App. 535, 539 (7) (546 SE2d 895) (2001).

surgery; (8) Diagnoses dental radiographs or makes radiographs except for use by a licensed dentist or a licensed physician; or (9) By any means whatsoever makes it known, implies, or holds out to the public in any fashion that such person will do any of the operations, procedures, or services set forth in this subsection. (b) Proof of any one or all of the acts mentioned in this Code section shall constitute prima-facie evidence of the practice of dentistry.

Belinfante maintains that the Dental Practice Act does not prohibit his conduct. He also argues that the trial court correctly relied on *Cardio TVP*[4] because it is improper for a jury to decide whether dentists may perform the cosmetic procedures involved here. Belinfante claims that the question is one for the Board.

*Cardio TVP* does not always deprive the courts of the authority to determine whether the violation of a statute defining an exception to the general prohibition against practicing medicine without a license constitutes negligence per se.[5] In *Cardio TVP*, our Supreme Court considered the question of whether the Physician's Assistant Act (PAA) allowed a physician's assistant to harvest a vein from the patient's leg for use in coronary artery bypass surgery. The General Assembly enacted the PAA "to encourage the more effective utilization of the skills of physicians by enabling them to delegate health care tasks to [physician's] assistants where such delegation is consistent with the patient's health and welfare."[6] Because the comprehensive statutory scheme created by the legislature placed an all-inclusive role upon the Composite State Board of Medical Examiners, the Court ruled that such question was a matter strictly for that medical board.

But neither the Composite State Board of Medical Examiners nor the Georgia Board of Dentistry plays an all-inclusive role in the practice of dentistry. Although the General Assembly charged the Georgia Board of Dentistry with duties "relative to the protection of the public health and the control and regulation of the practice of dentistry,"[7] the Board is without authority to expand the scope of the practice of dentistry beyond its statutory limits. Because the significant question of where the practice of dentistry ends and the practice of medicine commences has been determined by the legislature,[8] this

---

[4] Supra.

[5] *Rockefeller v. Kaiser Foundation Health Plan &c.*, 251 Ga. App. 699, 702-703 (1) (554 SE2d 623) (2001). See OCGA § 43-34-26 (b).

[6] OCGA § 43-34-101 (b).

[7] OCGA § 43-11-7.

[8] See OCGA § 43-11-1 et seq.; *Holcomb v. Johnston*, 213 Ga. 249, 252 (98 SE2d 561) (1957) ("the practice of dentistry is affected with the public interest, and to insure protection

issue is one of statutory interpretation.

When interpreting a statute, we ascertain and effect the legislative intent.[9] We give all words, other than terms of art associated with a particular area of expertise, their ordinary and everyday meaning.[10] We neither limit nor extend the operation of the language by resorting to subtle and forced constructions.[11] Further, it is a fundamental principle of statutory construction that the enumeration of certain things in a statute implies the exclusion of others.[12]

OCGA § 43-11-17 does not expressly list any of the cosmetic procedures that Belinfante performed, and we must regard the omission as deliberate.[13] Only paragraphs (1) and (4) of subsection (a) even arguably could be interpreted as including the procedures. But subsection (a) (1) requires that the "dental operation" be related to the "treatment of diseases or lesions," and it is undisputed that the cosmetic procedures here were elective and treated no diseases and no lesions. We next focus on subsection (a) (4) and consider whether the legislature, by using the phrase "dental operation . . . on the human oral cavity, teeth, gingiva, alveolar process, maxilla, mandible or associated structures, or associated contiguous masticatory structures," intended to include within the practice of dentistry elective facelifts, chin augmentations, eyelid revisions, and facial laser treatments. First, the Georgia Legislature limited the types of procedures encompassed by that subsection to those "dental" in nature. Dorland's Illustrated Medical Dictionary (28th ed.) defines "dental" as "pertaining to a tooth or teeth." Second, only the term "associated structures" needs further interpretation, as it is readily apparent that the other terms do not encompass the facial components at issue here. And a longstanding rule of construction provides "that a general term following specific terms is confined to the same kind or category of thing."[14] The human body parts specifically enumerated in OCGA § 43-11-17 (a) (4) pertain to the teeth, further demonstrating that the legislature intended to so limit the practice of dentistry.

The elective cosmetic procedures in this case were not expressly listed in OCGA § 43-11-17, were not dental in nature, and were not confined to "the human oral cavity, teeth, gingiva, alveolar process, maxilla, mandible or associated structures, or associated contiguous

---

of the public health and welfare the profession of dentistry is a logical subject for regulation by the legislature").

[9] *Glisson v. Hosp. Auth. of Valdosta &c.*, 224 Ga. App. 649, 653 (1) (481 SE2d 612) (1997).

[10] Id.

[11] Id.

[12] *Siegrist v. Iwuagwa*, 229 Ga. App. 508, 510 (1) (494 SE2d 180) (1997).

[13] Id.

[14] *Witty v. McNeal Agency*, 239 Ga. App. 554, 557 (2) (a) (521 SE2d 619) (1999).

masticatory structures."[15] Without resorting to a strained construction of that Code section, we cannot conclude they were acts constituting the practice of dentistry.[16] Furthermore, while opinions of the Attorney General are not binding on appellate courts, they can be considered persuasive authority.[17] We note that an Attorney General's opinion interpreting OCGA § 43-11-17 is in accord with our decision.[18]

Belinfante argues that OCGA § 43-11-17 does not provide an exhaustive list of dental acts. He cites the definition of "dentistry" as provided in OCGA § 43-11-1 (5)[19] and points out that it specifically references "maxillofacial area." He argues that it is therefore broad enough to encompass the cosmetic procedures. But OCGA § 43-11-1 (5) was added by amendment in 1999,[20] two years after Belinfante performed the cosmetic procedures involved here in March and May 1997. Therefore, this argument is unavailable to him.[21]

We hold as a matter of law that under Georgia's statutory scheme in March and May 1997, elective facelifts, chin augmentations, eyelid revisions, and dermabrasions did not fall within OCGA § 43-11-17.[22] Consequently, Belinfante violated that Code section by exceeding its scope.[23]

Having determined that Belinfante violated OCGA § 43-11-17,

---

[15] OCGA § 43-11-17 (a) (1), (4).

[16] See *Siegrist*, supra (applying principles of statutory construction to conclude that legislature intended to preclude chiropractors from treating patients with massages for a fee).

[17] *Campbell v. Poythress*, 216 Ga. App. 834, 835 (456 SE2d 110) (1995).

[18] 1989 Op. Atty. Gen. 110. We further note in passing that the Attorney General's Unofficial Opinion U96-3, addressing whether dentists can perform various types of plastic surgeries, including chin augmentation, eyelid revision, and dermabrasion, is also in accord with our decision.

[19] "Dentistry" means the evaluation, diagnosis, prevention, or treatment, or any combination thereof, whether using surgical or nonsurgical procedures, of diseases, disorders, or conditions, or any combination thereof, of the oral cavity, maxillofacial area, or the adjacent and associated structures, or any combination thereof, and their impact on the human body provided by a dentist, within the scope of his or her education, training, and experience, in accordance with the ethics of the profession and applicable law, including, but not limited to, the acts specified in Code Section 43-11-17.

[20] Ga. L. 1999, p. 234, § 1.

[21] See *A Tow, Inc. v. Williams*, 245 Ga. App. 661, 662, n. 1 (538 SE2d 542) (2000).

[22] Accord *Spiro v. Highlands Gen. Hosp.*, 489 S2d 802 (Fla. App. 1986) (a licensed dentist may practice medical anesthesia only in connection with the practice of dentistry, as to practice medical anesthesia as a specialty would be to engage in the practice of medicine for which he did not hold a license and no amount of hospital training or education in anesthesiology would cure the legal disability of a licensed dentist to administer anesthetics).

[23] See *Central Anesthesia Assoc. v. Worthy*, 254 Ga. 728, 730 (1) (333 SE2d 829) (1985) (a nursing student who administered anesthesia to a patient and who was not under any physician's supervision while doing so violated statute that provided that only certified registered nurse anesthetists could administer anesthesia and only while under the supervision of a physician).

we turn to whether such violation constituted negligence per se as to Brown. Georgia law allows the adoption of a statute as a standard of conduct so that its violation becomes negligence per se.[24]

> In determining whether the violation of a statute or ordinance is negligence per se as to a particular person, it is necessary to examine the purposes of the legislation and decide (1) whether the injured person falls within the class of persons it was intended to protect and (2) whether the harm complained of was the harm it was intended to guard against.[25]

Further, for a violation of a statute to be negligence per se, the violation "must be capable of having a causal connection between it and the damage or injury inflicted upon the other person," which refers not to the proximate cause element of the negligence action, but to the character of the legal duty involved.[26]

The primary purposes of the Georgia Dental Act were to define and regulate the practice of dentistry. By specifying in OCGA § 43-11-17 which acts constitute the practice of dentistry, the statute limited the scope of the practice of dentistry. Such limitation protects the health and welfare of patients who submit themselves to the care of dentists, by guarding against injuries caused by inadequate care or by unauthorized individuals. Brown falls within that class of persons the statute was intended to protect, and the harm complained of was of the type the statute was intended to guard against. Finally, Belinfante's violation of the statute is capable of causing Brown's alleged injuries. Consequently, his violation of OCGA § 43-11-17 constituted negligence per se.[27]

2. Brown next claims that Belinfante committed negligence per se because he violated Board Rule 150-8-.01 (h):

> [t]he Board has the authority to refuse to grant a license to an applicant[ ] or to discipline a dentist or dental hygienist licensed in Georgia if that individual has engaged in unprofessional conduct. For the purpose of the implementation and enforcement of this rule, unprofessional conduct is defined to include, but not be limited to, . . . [a]ny departure from, or failure to conform to, the minimal standards of acceptable and prevailing dental practice.

---

[24] *Central Anesthesia Assoc. v. Worthy*, 173 Ga. App. 150, 152-153 (325 SE2d 819) (1984), aff'd, *Worthy*, supra, 254 Ga. 728.

[25] (Citations, punctuation and emphasis omitted.) *Worthy*, supra, 173 Ga. App. at 153.

[26] (Citation and punctuation omitted.) Id.

[27] See *Rockefeller*, supra; *Worthy*, supra, 254 Ga. at 730 (1).

Brown asserts that Belinfante's acts fall within the "nonprofessional conduct" that is subject to discipline under this rule. But that is a question for the Board, not the courts.

Although the rule serves to regulate the dental profession, it does not establish a standard of conduct, the violation of which creates civil liability against the dentist in favor of a patient.[28] Belinfante's performance of the cosmetic procedures on Brown did not give rise to a claim of negligence per se based upon this rule.

*Judgment reversed. Smith, P. J., and Barnes, J., concur.*

DECIDED NOVEMBER 21, 2001 —
RECONSIDERATION DISMISSED DECEMBER 11, 2001 — 

*Curtis A. Thurston, Jr.*, for appellant.
*Smith, Gambrell & Russell, Matthew S. Coles*, for appellees.
*Fisher & Phillips, Robert C. Christenson*, amicus curiae.

---

[28] See generally *Generali — U. S. Branch v. Southeastern Security Ins. Co.*, 229 Ga. App. 277, 280 (2) (a), (b) (493 SE2d 731) (1997).
[1] *Fontaine v. Home Depot*, 250 Ga. App. 123 (550 SE2d 691) (2001).