A04A2170, A04A2171. VITO et al. v. DHILLON et al.;
and vice versa.
(605 SE2d 602)

ELDRIDGE, Judge.

It is undisputed in this case that appellee-plaintiff Gurjit Dhillon, then five feet five inches tall, sought elective cosmetic surgery to increase his height. Paid $40,000, podiatrist George R. Vito, D.P.M., performed a limb-lengthening procedure[1] on both of Mr. Dhillon's legs and feet, which were perfectly normal before undergoing the procedure. The surgery left one of Mr. Dhillon's legs shorter than the other and both angulated to the ground below the knee. On September 9, 2003, Mr. Dhillon filed his complaint for damages, later amended, against appellants-defendants Dr. Vito, Dr. Vito's employer, Foot & Leg Centers, Georgia, P.C. ("F & L"), and Surgical Centers of Georgia, P.C. ("Surgical Centers"), seeking damages and status as a class action alleging negligence per se for the unlawful practice of medicine as a podiatrist, fraud, and professional malpractice. On December 5, 2003, Dr. Vito, F & L, and Surgical Centers (collectively "the appellants") filed their motion for summary judgment, contending that Dr. Vito did not violate the Georgia Podiatry

---

[1] The procedure involves surgically breaking a patient's lower leg bones, attaching an external fixation device to separate the bone segments, and thereafter slowly separating them. With time, regenerated bone between the bone segments results in an increased length of the leg, in this case apparently five inches.

Act, OCGA § 43-35-3 et seq., for performing the complained-of procedure on Mr. Dhillon's legs; that, even were the Act violated, a showing of a deviation from the standard of care was nonetheless required; and that class action treatment was improper, fraud having been alleged and individual questions of law and fact predominating. The appellants filed their amended motion for summary judgment on January 14, 2004 — this to show Mr. Dhillon's consent to undergo the procedure complained of. Contemporaneously, Mr. Dhillon filed a cross-motion for partial summary judgment upon his negligence per se claim for the unauthorized practice of medicine. On February 27, 2004, Surgical Centers joined Dr. Vito and F & L in their motions for summary judgment ("appellants' motion for summary judgment").

Upon his motion, the state court granted Mr. Dhillon a default judgment as to liability on his amended complaint on March 1, 2004 — this for an untimely filed answer upon finding that the parties had entered into a consent agreement which, in addition to authorizing Mr. Dhillon to amend his complaint, had required an answer of the appellants. Thereafter, the appellants moved that the default be opened, and on April 16, 2004, the state court did so, finding a proper case. The state court's denial of the appellants' motion for summary judgment and its grant of Mr. Dhillon's motion for partial summary judgment followed one week later.

In Case No. A04A2170, the appellants challenge the denial of their motion for summary judgment and the grant of partial summary judgment, contending that the Georgia Podiatry Act permits elective cosmetic leg lengthening by podiatrists; that given the foregoing, partial summary judgment for Mr. Dhillon on his negligence per se claim was improper; and that the case against them is inappropriate for certification as a class action under OCGA § 9-11-23. In Case No. A04A2171, Mr. Dhillon contends that the state court erred in opening the default upon his amended complaint, arguing that the default should stand as a sanction for alleged discovery improprieties undertaken by Dr. Vito. Elective cosmetic leg lengthening by a podiatrist as the unauthorized practice of podiatry, such violation of law as capable of causing the injuries alleged, the state court did not err in denying the appellants' motion for summary judgment and in granting Mr. Dhillon's partial motion for summary judgment.[2] The state court having reserved its ruling upon the instant action as proper for certification as a class action, there is nothing for us to review on appeal thereon. *Fowler v. Cox*, 264 Ga.

---

[2] By its grant of partial summary judgment upon Mr. Dhillon's negligence per se claim, the state court found only that "Defendant Vito exceeded the permitted scope of the Georgia Podiatry Act and [did] not grant summary judgment on the issue[s] of causation or damages."

App. 880, 889 (2) (592 SE2d 510) (2003). Further, the record revealing no abuse of discretion in the state court upon opening the default as a proper case, no error obtained on that account. Accordingly, we affirm in both cases.

When there is no genuine issue of material fact and the movant is entitled to summary judgment as a matter of law, summary judgment is proper. A de novo standard of review lies as to an appeal from a grant of summary judgment, OCGA § 9-11-56 (c), and we must consider the evidence in the light most favorable to the nonmovant. *Gilbert v. Montlick & Assoc.*, 248 Ga. App. 535, 539 (7) (546 SE2d 895) (2001).

*Case No. A04A2170*

1. (a) Summary Judgment (Violation of the Georgia Podiatry Act). Pertinently, the Act defines podiatry as follows:

> "Podiatric medicine," which includes chiropody, podiatry, and podiatric medicine and surgery, means that portion of the practice of medicine identified by the acts described in any one or more of the following:

> (A) Charging a fee or other compensation, either directly or indirectly, for any history or physical examination of a patient in a person's office or in a hospital, clinic, or other similar facility prior to, incident to, and necessary *for* the diagnosis and *treatment, by* primary medical care, *surgical* or other *means, of diseases, ailments, injuries, or abnormal conditions of the human foot and leg*; . . .

> (D) Performing surgery on the foot or leg of a patient, except that when such surgery is performed under general anesthesia it shall be permissible only when said surgery is performed at a facility permitted and regulated as a hospital or ambulatory surgical treatment center under Article 1 of Chapter 7 of Title 31 and when said general anesthesia is administered under the direction of a duly licensed physician.

(Emphasis supplied.) OCGA § 43-35-3 (5). Reading the foregoing provisions of the law together, the state court found that "a podiatrist is permitted to perform surgery within certain parameters but not to perform [elective] cosmetic surgery, as was the case with Dr. Vito." While the appellants argue that the General Assembly's use of

semi-colons and the conjunctive[3] "or" between the subsections of OCGA § 43-35-3 (5) forecloses any reading of subsection (D) thereof as limited by the provisions of subsection (A), we disagree. Clearly to interpret subsection (D) as permitting surgery beyond that which is permitted as incident to subsection (A) would be to lift a segment of the statute out of context and give it a construction inconsistent with that of the Act as a whole. This we cannot do. " 'A statute is to be construed in accordance with its real intent and meaning and . . . without resorting to subtle and forced constructions for the purpose of either limiting or extending its operation. [Cit.]' [Cit.]" *Glisson v. Hosp. Auth. of Valdosta &c.*, 224 Ga. App. 649, 653 (1) (481 SE2d 612) (1997). And it is a well-settled rule of construction that "a general term following specific terms is confined to the same kind or category of thing. See OCGA §§ 13-2-1; 13-2-2 (4); *Gore v. State*, 79 Ga. App. 696 (54 SE2d 669) (1949)." *Witty v. McNeal Agency*, 239 Ga. App. 554, 557 (2) (a) (521 SE2d 619) (1999); *Brown v. Belinfante*, 252 Ga. App. 856, 859 (1) (557 SE2d 399) (2001).

Further the appellants err in relying upon our decision in *Sandford v. Howard*, 161 Ga. App. 495 (288 SE2d 739) (1982), for the proposition that a podiatrist's authority to operate on a human leg is coextensive with that of an orthopedic surgeon "short of amputation." Id. at 496 (1). *Sandford* was decided under former Code 1933 § 84-601, a Code section defining podiatry simply as "the diagnosis, medical, surgical, mechanical, manipulative and electrical treatment limited to the ailments of the human foot and leg. No podiatrist shall do any amputation or use any anesthetic other than local." Id. It is apparent that our conclusion as to the scope of a podiatrist's surgical authority in *Sandford* is appropriate only in the context of the statute as then controlling and that podiatry as now defined by OCGA § 43-35-3 (5), in part at least, reflects corrective action taken by the General Assembly in light of *Sandford*.

OCGA § 43-35-3 (5) (A) plainly limits podiatrists to performing that surgery which is necessary to treating "diseases, ailments, injuries, or abnormal conditions of the human foot and leg." Id. Elective cosmetic surgery as not included therein and appropriate to the practice of medicine beyond podiatry only, see OCGA § 43-34-20 (3) (practice of medicine, among other things, as inclusive of any form of treatment for injury to the mind); *Brown v. Belinfante*, supra at 860 (elective cosmetic procedures as not listed in the Dental Practice Act, OCGA § 43-11-1 et seq., not dental in nature, and beyond the mouth

---

[3] "Conjunctions serve as connectors. The coordinating conjunctions (*and, but, or, nor, for, so,* and *yet*), as well as the correlatives (*both-and, either-or, neither-nor, not only, but also, whether-or*), connect sentence elements (words, phrases, or clauses) of equal grammatical rank." (Emphasis in original.) Harbrace College Handbook, 11th ed., p. 16.

area), the surgery performed in the instant case was, as a matter of law, violative of the Georgia Podiatry Act. OCGA § 43-35-3 (5). Under these circumstances, the state court did not err in denying summary judgment to the appellants. OCGA § 9-11-56 (c); *Gilbert v. Montlick & Assoc.*, supra.

(b) Partial Summary Judgment (Negligence per se). Georgia authorizes "the adoption of a statute as a standard of conduct so that its violation becomes negligence per se. [Cit.]" *Central Anesthesia Assoc. v. Worthy*, 173 Ga. App. 150, 152-153 (325 SE2d 819) (1984).

> In determining whether the violation of a statute or ordinance is negligence per se as to a particular person, it is necessary to examine the purposes of the legislation and decide (1) whether the injured person falls within the class of persons it was intended to protect and (2) whether the harm complained of was the harm it was intended to guard against.

(Citation, punctuation and emphasis omitted.) Id.; *Brown v. Belinfante*, supra at 861. And if a statutory violation is to constitute negligence per se, that violation must be one which is capable of producing the injury inflicted. *Central Anesthesia Assoc. v. Worthy*, supra at 153; *Brown v. Belinfante*, supra.

The purpose of the Georgia Podiatry Act is to "safeguard[ ] the public health, safety, and welfare by providing for administrative control, supervision, and regulation of the practice of podiatric medicine in this state." OCGA § 43-35-2. There can be no doubt that Mr. Dhillon as Dr. Vito's patient in this case "falls within that class of persons the statute was intended to protect, and the harm complained of was of the type the statute was intended to guard against." Likewise, it is self-evident that the instant violation is one capable of producing injuries of the type which Mr. Dhillon alleges he suffered. Consequently, Dr. Vito's violation of OCGA § 43-35-3 (5) was negligence per se as a matter of law, and partial summary judgment for Mr. Dhillon on his claim thereof was proper. OCGA § 9-11-56 (c); *Gilbert v. Montlick & Assoc.*, supra.

### Case No. A04A2171

2. Neither did the state court err in opening the default upon the amended complaint.

OCGA § 9-11-55 (b) allows a prejudgment default to be opened upon one of three grounds, the "proper case" ground among them, if four conditions are met. Compliance with the four conditions is a condition precedent, and once met, the question of whether to open

the default on one of the three grounds rests within the sound discretion of the trial court. *Stewart v. Turner*, 229 Ga. App. 119, 121 (2) (493 SE2d 251) (1997).

The state court analyzed the factors to be considered in opening default and determined that Mr. Dhillon would suffer no prejudice by allowing the default to be opened; that the appellants timely remedied the default and paid costs; and that all remaining conditions set forth in OCGA § 9-11-55 (b) were adhered to. In doing so, there was no error for its refusal to consider Mr. Dhillon's claims of impropriety in discovery as to Dr. Vito, these as properly the subject of a motion for sanctions and beyond the scope of the state court's inquiry on motion to open default. OCGA §§ 9-11-37; 9-11-55 (b); *Stewart v. Turner*, supra. Inasmuch as default judgment was entered upon Mr. Dhillon's amended complaint, a complaint substantially identical to the original complaint which was timely answered and which has been vigorously litigated since, we perceive no error in the state court's ruling that the appellants met the requirements to open the default as a proper case. See *Muscogee Realty Dev. Corp. v. Jefferson Co.*, 252 Ga. 400 (314 SE2d 199) (1984).

*Judgments affirmed in Case Nos. A04A2170 and A04A2171. Ruffin, P. J., and Adams, J., concur.*

DECIDED SEPTEMBER 21, 2004 —
RECONSIDERATION DENIED OCTOBER 6, 2004 — CERT. APPLIED FOR.

*Hall, Booth, Smith & Slover, James E. Looper, Jr., R. Lars Anderson*, for appellants.

*Budd, Larner, Rosenbaum, Greenberg & Sade, Prescott L. Nottingham, Mark A. Inman*, for appellees.