A05A1096. GROOVER v. JOHNSTON et al.
(625 SE2d 406)

SMITH, Presiding Judge.

In this renewal of a medical malpractice case, we granted Dennis Groover's application for interlocutory appeal from the trial court's denial of his motion for partial summary judgment. Groover, individually and as the representative of his incapacitated wife, Katheryn Groover, asserted claims of negligence and negligence per se against Dr. Edwin Johnston, Jr. and Johnston's employer, Coosa Anesthesia, LLC (collectively "Johnston"). Groover sought partial summary judgment only as to the claim of negligence per se. We conclude that the trial court erred in finding no negligence per se. To the extent that the trial court's order prohibits evidence of negligence per se at trial or implicitly grants summary judgment to Johnston, it is reversed. Nevertheless, because the issue of proximate cause is a jury question even when negligence per se is found, the trial court properly denied summary judgment to Groover as to this issue.

On appeal, we conduct "a de novo review of the evidence to determine whether there is a genuine issue of material fact and

whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." (Citations and punctuation omitted.) *Blockum v. Fieldale Farms Corp.*, 275 Ga. 798, 800 (573 SE2d 36) (2002).

So viewed, the record shows that Katheryn Groover underwent a routine, elective hysterectomy at Redmond Regional Medical Center. After surgery, she was transferred to the recovery room, which at Redmond is called the post-anesthesia care unit (PACU). While there, she was under the care of Johnston, an anesthesiologist, who supervised the nurses in the unit. In the PACU she received several narcotic medications for pain. After slightly more than an hour, she was discharged from the PACU in stable condition.

Katheryn Groover's PACU nurse transported her to a hospital room at 11:00 a.m. and left her in the care of a floor nurse. At that time, according to the PACU nurse, "[H]er vital signs were stable." Vital signs were again charted by the floor nurse at 11:35 a.m. Approximately a half-hour later, a different floor nurse found Mrs. Groover inexplicably unresponsive. Attempts to revive her were unsuccessful, and she never resumed breathing. She was taken to the intensive care unit and placed on a ventilator, but she suffered brain damage from oxygen deprivation. It is undisputed that she is permanently and totally disabled and requires full-time care.

1. In his motion for partial summary judgment, Groover contended that Johnston violated the standard of care established in OCGA § 43-34-26.1, and that the violation constituted negligence per se. Violation of a statute does not necessarily constitute negligence per se; to determine whether the violation of a statute in a particular instance constitutes negligence per se, a trial court must consider the purpose of the legislation. *Brown v. Belinfante*, 252 Ga. App. 856, 861 (1) (557 SE2d 399) (2001). The court must then decide whether the person harmed falls within the class of persons the legislation was intended to protect and whether the harm or injury actually suffered was the same harm the statute was intended to guard against. Id. The violation also "must be capable of having a causal connection between it and the damage or injury inflicted." (Punctuation omitted.) Id.

In relevant part, OCGA § 43-34-26.1 provides that a doctor

> may delegate to: . . . [a] nurse recognized by the Georgia Board of Nursing as a certified nurse midwife, certified registered nurse anesthetist, certified nurse practitioner, or clinical nurse specialist . . . in accordance with a nurse protocol the authority to order controlled substances selected from a formulary of such drugs established by the

Composite State Board of Medical Examiners and the authority to order dangerous drugs, medical treatments, and diagnostic studies.

OCGA § 43-34-26.1 (b) (1) (B). The statute defines the term "[o]rder" as "to select a drug . . . in accordance with a nurse protocol." OCGA § 43-34-26.1 (a) (8). "Nurse protocol" is defined as

a written document mutually agreed upon and signed by a nurse and a licensed physician, by which document the physician delegates to that nurse the authority to perform certain medical acts pursuant to subsection (b) of this Code section, and which acts shall include, without being limited to, the administering and ordering of any drug.

OCGA § 43-34-26.1 (a) (7).

(a) Groover argues that subsection (b) (1) (B) of the statute must be read to permit a physician such as Johnston to delegate his authority to order controlled drugs, such as narcotics, to registered nurses *only* if the nurses have specified advanced training and skills, and *only* if a written protocol is in place. In contrast, Johnston argues that the statute places no limit on the extent to which physicians may delegate their authority to nurses without the advanced skills or training specified in the statute. According to Johnston, the statute simply does not apply, because the nurses in the PACU were nurses without the advanced skills or training specified in the statute.

Johnston's reading fails both logically and historically. Logically, it makes no sense for the General Assembly to have placed stringent controls and limits on the extent to which physicians may delegate authority to nurses with advanced or specialized training, while at the same time giving physicians unlimited power to delegate their authority to nurses with less training, skills, and experience. And we must construe a statute so as to avoid an absurd result. *Mansfield v. Pannell*, 261 Ga. 243, 244 (404 SE2d 104) (1991).

No purpose is stated explicitly in the statute. The events and circumstances prevailing at the time it was enacted, however, shed light on its intended purpose. See Rowe, "Health: Registered Nurses and Physicians' Assistants May Order Drugs Under Protocol," 6 Ga. St. Univ. L. Rev. 304 (1989). Before the statute's enactment, registered nurses in Georgia had statutory authority to *administer* medications, but no authority to *order* medications. Id. at 304-305. Yet the practice of nurses ordering medication under a written protocol existed, primarily in the public health arena, but also in other settings. When the attorney general issued an opinion finding this

practice illegal, difficulties ensued in public health and indigent medical care, prompting the enactment of the statute. Id.

The proposed legislation was originally introduced to meet the health care needs of indigent and rural Georgians, where an insufficient number of practicing physicians made expanded nurse care necessary. Rowe, supra at 311. The Act as passed, however, has a broader scope that protects the public in general. Id. The statute permits registered nurses without advanced training to "order" medications only if they are working in certain public health agencies or indigent outpatient clinics. OCGA § 43-34-26.1. It provides that nurses with advanced training may "order," but not "prescribe" or "dispense" controlled or dangerous drugs under "protocols" in all settings.[1] Id. at 308. The statute therefore clearly applies in this case; it provides a standard of care governing situations in which doctors delegate their authority to "order," "prescribe," or "dispense" to nurses.

(b) Having concluded that the statute does apply here, we address Groover's contention that Johnston is guilty of negligence per se because he violated the statute, which sets forth the standard of care.[2] The nurses in Redmond's PACU did not have advanced skills or training, and Redmond is not a public health or indigent care facility within the meaning of the statute. Groover argues that Johnston violated the statute in two ways: by delegating his authority to order and dispense drugs to PACU nurses who were registered nurses without advanced training or certification; and by delegating that authority without a written protocol being in place. Groover asserts that the custom and usual practice in the PACU at Redmond was to use "standing verbal orders." The nurses in the PACU were permitted to select which of a number of possible pain medications to give, what dosage to administer, and when and how to administer the chosen medication.

The record supports these factual contentions, and Johnston does not dispute them. Indeed, both Johnston and the two PACU nurses caring for Mrs. Groover admitted under oath that the "standing verbal orders" in existence at the time of Mrs. Groover's surgery allowed the PACU nurses "to administer narcotics to patients without requiring them to consult with a physician prior to administration." Johnston testified that he knew of "no written protocol," and

---

[1] An exception is made for life-threatening situations.

[2] The order denying Groover's motion for partial summary judgment recites that a ruling made by the judge who presided over the original, dismissed action would not be disturbed. The original action did not proceed to verdict and judgment, and we are unclear regarding the import of this recital. To the extent that the trial court intended to apply an estoppel theory in this renewal action, however, that portion of the order is disapproved.

that his "standing verbal orders" gave the nurses discretion to administer narcotics to patients in the PACU without asking him "as necessary to get the pain under control." According to Johnston, when patients were discharged from the PACU and sent to a floor, his customary practice was to sign the chart, indicating that he was approving the medications already administered. He believed that his signature converted his verbal standing order into a written order, albeit after the fact. It was his impression that this satisfied the provision in the hospital bylaws requiring such orders to be in writing.

OCGA § 43-34-26.1 (b) creates a duty recognized by the law to protect patients against unreasonable risk. That duty requires a physician to conform to a certain standard when delegating authority to a nurse.[3] See *Central Anesthesia Assoc. v. Worthy*, 254 Ga. 728, 733 (2) (333 SE2d 829) (1985). It is clear from the evidence presented that nurses in Redmond's PACU routinely functioned without a written protocol and that they ordered controlled substances and administered them to patients. This practice violates the statute and offends the statute's purpose of ensuring good patient care.[4]

Having determined that the purpose of the statute was undermined, we turn to the remaining factors to be considered when deciding whether violation of the statute constituted negligence per se. *Brown*, supra, 252 Ga. App. at 861 (1). Because Katheryn Groover was a patient, she falls within the class of persons OCGA § 43-34-26.1 (b) (1) (B) was intended to protect, and the harm she suffered is one the statute was intended to guard against. Lastly, common sense dictates that if an unqualified person selects an improper drug or administers an improper type or amount of medication, especially to a patient emerging from anesthesia, disastrous consequences such as those that befell Katheryn Groover are possible. Because all the elements were present, the trial court erred in concluding that Groover had not shown negligence per se. See *Brown*, supra.

2. The conclusion that Groover showed negligence per se, however, does not conclude our analysis. Groover also contends that the trial court's order denying partial summary judgment appears to

---

[3] Groover correctly points out that the trial court's order recites that "the standard of care must be shown by the facts." To the extent that such a statement conflates the standard, which is a matter of law, and evidence showing whether that standard was violated, which is a matter of fact, it is disapproved.

[4] This practice was also condemned by expert witnesses called by Groover. One plaintiff's expert acknowledged that he had never before even seen "verbal standing orders." Another expert testified that he could not "imagine any circumstance where" a verbal standing order "would comport with an acceptable standard of care." We note that following Katheryn Groover's injury, hospital custom and practice were changed to require written protocols. An anesthesiologist must write specific orders regarding the amount of narcotics approved.

eliminate negligence per se considerations and evidence from trial and to implicitly grant partial summary judgment to Johnston on Groover's claim for recovery under a theory of negligence per se.

"[E]ven when negligence per se has been shown, proximate cause must still be proved. [Cits.]" *Central Anesthesia Assoc.*, supra, 254 Ga. at 733. To recover under a negligence per se theory, Groover must establish that Johnston's violation of the statute governing delegation of his authority to nurses proximately caused Katheryn Groover's injury. This will require Groover to demonstrate a causal relationship between Katheryn Groover's injury and the ordering and administration of pain medication by the nurses in the PACU in violation of OCGA § 43-34-26.1 (b). It will also require a showing that had the pain medication been selected and proper dosages ordered, either by Dr. Johnston or by a nurse with advanced training to whom he delegated his authority under a written protocol, Katheryn Groover would not have incurred the injury. See *Rockefeller v. Kaiser Foundation Health Plan*, 251 Ga. App. 699, 703 (1) (554 SE2d 623) (2001) (same causal connection must be shown to recover for improper delegation to physicians' assistants).

Groover may be able to prove causation at trial, but he has not yet done so. It follows that even though negligence per se was established, partial summary judgment was not appropriate because Groover has not shown proximate cause. In attempting to prove proximate cause, Groover will be permitted to present to the jury evidence showing negligence per se. Because a judgment right for any reason must be affirmed, see, e.g., *Hall v. Coleman*, 264 Ga. App. 650, 653 (1) (592 SE2d 120) (2003), we affirm the trial court's denial of Groover's motion for partial summary judgment.

*Judgment affirmed in part and reversed in part. Ellington and Adams, JJ., concur.*

DECIDED NOVEMBER 10, 2005 —
RECONSIDERATION DENIED DECEMBER 15, 2005 — ▮▮▮▮

Robert K. Finnell, Bondurant, Mixson & Elmore, Michael B. Terry, Bird & Mabrey, William Q. Bird, John G. Mabrey, for appellant.

Brinson, Askew, Berry, Seigler, Richardson & Davis, Robert L. Berry, Jr., Stephen B. Moseley, for appellees.