**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 15, 2018**

# In the Court of Appeals of Georgia

A17A2119, A17A2120. ALMASSUD v. MEZQUITAL; and vice versa.

McFADDEN, Presiding Judge.

These appeals arise from a final judgment entered after a jury trial. Because the trial court erred in failing to instruct the jury on a substantial and vital issue presented by the pleadings and the evidence — the defendant's theory that his alleged negligence per se was unknowing and unintentional — we must reverse and remand for a new trial.

On October 21, 2012, Abdulmohsen Almassud and Luisa Mezquital were driving motor vehicles in opposite directions on a road in Forsyth County. As they approached each other, Almassud's jeep crossed the center line and crashed into Mezquital's car. Mezquital sustained severe injuries to her hand in the collision.

On August 28, 2014, Mezquital filed a lawsuit against Almassud, alleging, among other things, that Almassud knowingly operated the jeep on public roadways while it was unsafe, that Almassud's acts constituted negligence per se, and that his conduct proximately caused her injuries. Almassud answered the complaint, claiming that the steering of the vehicle had failed and caused the collision, that he did not knowingly operate the jeep while it was unsafe, and that Mezquital's injuries were proximately caused by the negligence of non-party Oh's Auto Center. Mezquital filed an amended complaint, adding the owner of Oh's Auto Center as a defendant.

In the parties' consolidated pre-trial order, Mezquital's outline of the case contended, among other things, that Almassud was negligent per se because he had violated several Georgia code sections concerning operating vehicles and that such negligence per se proximately caused her injuries. In the pre-trial order, Almassud's outline of the defense asserted that the jeep was rendered uncontrollable when its steering suddenly and without warning failed; that the jeep collided with Mezquital's vehicle because Almassud was unable to steer the jeep to avoid the collision; that about a week before the collision, Oh's had installed a new steering kit on the vehicle; that Almassud had driven the jeep for approximately a week with no apparent

2

problems; and that Oh's negligent work on the jeep resulted in the steering failure and proximately caused Mezquital's injuries.

The case proceeded to a jury trial, at which Mezquital presented evidence, including expert testimony, supporting her claims of negligence and negligence per se against Almassud. Almassud testified that the steering on his jeep was working fine prior to the work by Oh's, that Oh's had installed the new steering kit several days before the accident, and that right before the collision his vehicle had a steering failure. He also presented expert testimony that the steering mechanism had been improperly installed and had caused a loss of steering control prior to the collision.

Almassud's written requests for jury instructions included the following: "I charge you members of the jury that for an owner of a vehicle to be held liable for injuries that occur due to an unsafe or defective condition of his vehicle[], the plaintiff must show not only that the vehicle was [being] operated with the owner's consent, but that the owner knew of its defective or unsafe conditions." (Internal quotation marks omitted). At a jury charge conference, Almassud's attorney informed the court that the request as written could be modified, but that the jury should be instructed that "Almassud had to have knowledge of the unsafe or defective condition of the vehicle." Almassud's attorney further explained that such a charge would tie

into the court's charge that a violation of the statute governing the driving of an unsafe or improperly equipped vehicle is negligent per se. Thus, counsel requested a jury charge "[t]hat there has to be some knowledge on the part of the driver that he is, in fact, operating an unsafe or defective vehicle."

The trial judge refused the request, stating: "I'm not going to give that. I'm not going to give that alteration. The issue . . . ultimately comes down to reasonable care. You certainly can argue it, that he didn't know and had no way of knowing and that should bear on how they consider the verdict[,] but I'm not going to add that. I think that unnecessarily complicates it."

During its charge to the jury, the trial court instructed the jury that Mezquital contended that Almassud had violated certain statutes and that "[s]uch violations are called negligence per se which means negligence as a matter of law." The court instructed the jury on each of the statutes in question, including OCGA § 40-8-7 for driving an unsafe vehicle, OCGA § 40-6-40 (a) for operating a vehicle in the wrong lane of travel, and OCGA § 40-6-48 for failure to maintain a lane. At the conclusion of each instruction on the substance of each statute, the trial court told the jury that "[a] violation of this statute is negligence per se."

The jury returned verdicts awarding Mezquital special and general damages totaling more than $30 million, finding Almassud wholly responsible for the damages, and awarding Mezquital $93,884 in attorney fees. The trial court entered judgment on the verdicts. The court denied Almassud's motion for a new trial and Mezquital's motion seeking additional attorney fees beyond those awarded by the jury. Almassud appeals from the denial of his motion for a new trial and Mezquital cross-appeals, challenging the denial of her request for additional attorney fees.

1. *Refusal to charge the jury on Almassud's defense.*

Almassud contends that the trial court erred in failing to charge the jury on his defense that he had no knowledge that his vehicle was defective. We agree.

"It is the duty of the trial court, whether requested or not, to give the jury appropriate instructions on every substantial and vital issue presented by the evidence, and on every theory of the case." *Mullis v. Chaika*, 118 Ga. App. 11, 18 (4) (162 SE2d 448) (1968) (citations and punctuation omitted). See also *Gurin v. General Motors Corp.*, 171 Ga. App. 159, 160 (1) (318 SE2d 830) (1984) ("The trial court is obligated to instruct the jury on all theories and issues raised by the parties and supported by the evidence.").

5

A charge on a given subject is justified if there is even slight evidence from which a jury could infer a conclusion regarding that subject. A trial court may deny a specific request to charge if any portion of the request is inapt or incorrect, because a request to charge must be correct, legal, apt, even perfect, and precisely adjusted to some principle involved in the case. Nevertheless, a trial court must instruct a jury on the law as to every controlling, material, substantial and vital issue in the case. The failure to charge on a properly asserted and legally cognizable theory of recovery [or defense], whether requested or not, or attention be called to it or not, is harmful as a matter of law.

*Oglethorpe Power Corp v. Estate of Forrister*, 332 Ga. App. 693, 707 (3) (774 SE2d 755) (2015) (citation and punctuation omitted). Accord *Duffield v. Chui*, 314 Ga. App. 214, 215 (723 SE2d 506) (2012).

In this case, Mezquital made out a prima facie showing that Almassud's operation of the vehicle was negligence per se because it violated at least one state statute, which "mean[t] that the burden then shift[ed] to [Almassud] to show that the violation was unintentional and in the exercise of ordinary care. Otherwise [the prima facie showing would] be conclusive." *Williams v. Calhoun*, 175 Ga. App. 332, 333-334 (333 SE2d 408) (1985) (citations omitted). Accord *Whole Foods Mkt. Group v. Shepard*, 333 Ga. App. 137, 140 (3) (775 SE2d 616) (2015) ("Once a plaintiff establishes a prima facie case of negligence per se, the 'burden then shifts to the defendant to show that the violation was unintentional and in the exercise of ordinary

6

care.' [Cit.]"); *Johnson v. McAfee*, 151 Ga. App. 774, 775 (2) (261 SE2d 708) (1979) (Upon showing of negligence per se, "'[i]t then devolves upon the defendant to produce evidence in his own behalf to satisfy the jury that the operation of the automobile was not a violation of a statute or ordinance because unintentional and not the result of any failure to exercise ordinary care on his part.' [Cit.]"). Thus, in order "to rebut the presumption that he was [negligent, Almassud] was required to present sufficient competent evidence that [any violation of a state statute was unintentional]." *Butgereit v. Enviro-Tech Environmental Svcs.*, 262 Ga. App. 754, 755 (1) (586 SE2d 430) (2003).

Almassud attempted to meet this burden and rebut the presumption of negligence by showing that the steering in his vehicle had been defectively installed, that the steering failed immediately before the collision, and that he did not know of any defect in the vehicle. See generally *Jacobs v. Felmet*, 105 Ga. App. 234 (124 SE2d 307) (1962) (finding no negligence on part of defendant where he had no knowledge or notice of any defect in brakes until they suddenly gave way causing collision with vehicle traveling in opposite direction). As recounted above, he raised this defense in his pleadings and presented some evidence, including his own testimony and that of an expert witness, supporting that defense theory.

7

Accordingly, Almassud was entitled to a jury instruction on the vital issues of knowledge of a defect and unintentional violations that were raised by the pleadings, the evidence, and the defense theory of the case. Even assuming that Almassud's written request for such an instruction was not perfect, he acknowledged at the charge hearing that the written request should be changed in order to instruct the jury properly on the defense; and "[n]evertheless, a trial court must instruct a jury on the law as to every controlling, material, substantial and vital issue in the case." *Oglethorpe Power Corp.*, supra (citation omitted). Accord *Duffield*, supra (failure to charge on a properly asserted and legally cognizable theory, whether requested or not, is harmful error). However, these vital issues concerning the defense theory were not included in, or otherwise covered by, the trial court's jury instructions.

> While we are reluctant to disturb any jury's verdict, a new trial must be granted when a trial court deprives a defendant of a theory of defense by [failing to give a] charge that is sustained by the evidence. Given that the trial court's [jury] charge . . . deprived [Almassud] of a theory of defense to which [he was] entitled, we conclude that [he is] entitled to a new trial."

*Maxineau v. King*, 304 Ga. App. 217, 221 (695 SE2d 732) (2010) (citations and punctuation omitted). See also *Lawyers Title Ins. Corp. v. New Freedom Mortg. Corp.*, 288 Ga. App. 642, 645 (1) (655 SE2d 269) (2007) (jury charge errors on legal

8

principles that go to the crux of the appellant's case are considered substantial and harmful).

2. *Remaining enumerations.*

Given our holding above in Division 1, we do not reach the remaining enumerations of error set forth in either the main appeal or the cross-appeal.

*Judgments reversed and cases remanded. Branch and Bethel, JJ., concur.*