**FOURTH DIVISION**
**MCFADDEN, P. J.,**
**WATKINS and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be**
**physically received in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.gov/rules**

**May 26, 2026**

# In the Court of Appeals of Georgia

A26A0817. PEPPER v. THELEN.

PADGETT, Judge.

Following a jury trial in this personal injury action arising out of motor vehicle collision, plaintiff Sandra Pepper appeals the judgment entered in favor of defendant Grant Thelen. Pepper contends the trial court erred in: (1) instructing the jury on the doctrine of sudden emergency; (2) failing to properly instruct the jury on negligence per se and Thelen's duty to maintain a proper lookout; and (3) denying Pepper's motions for partial directed verdict on the issues of sudden emergency and negligence per se. For the reasons that follow, we reverse and remand the case for further proceedings.

The evidence showed that on February 13, 2019, at approximately 9:00 p.m., Pepper was in the front passenger seat of a Ford Taurus traveling in the far left northbound lane of Interstate 75 in Morrow, Georgia, when another vehicle struck the side of the Taurus, causing the Taurus to spin and strike the left-side median wall before coming to a rest in the middle lane of five northbound lanes, facing southbound with its headlights out. The vehicle that had hit the Taurus ended up on the right-side shoulder of the highway.

Around the same time, Thelen was driving a Ford F-150 north on Interstate 75, approaching Morrow in the far left lane. Thelen moved from the far left lane into the second-most left lane, and then from the second lane to the third or middle of the five lanes. When he entered the third lane, he was directly behind a semi-truck; the truck braked, turned on its flashing hazard lights, and moved one lane over to the right. As the semi-truck was changing lanes, Thelen noticed another vehicle on the right-side shoulder with its hazard lights on that appeared to have been in an accident. Once the semi-truck completed its lane change and Thelen turned his attention back to his lane of travel, Thelen's headlights illuminated the disabled Taurus and he "tried to slam on [the] brakes [but] it was too late and [he] just hit" the Taurus. Thelen testified at trial that "[b]y the time [he] saw th[e] Ford Taurus, it was so fast

that … [he] just couldn't do anything[,]"and that he "didn't think about going to the right or going to the left or braking, [he] just did [what he did]."

The evidence further showed that five seconds before Thelen's F-150 made impact with the Taurus, it was traveling between 83.3 and 85 miles per hour, in a 65 mile-per-hour zone. Evidence from the F-150's event data recorder established that 1.1 seconds before impact, Thelen took his foot off the accelerator and pressed on the brake. The data additionally showed that one-tenth of a second before impact, Thelen made a fifteen-degree rightward steering input, resulting in a one-degree change in tire direction. Thelen testified that he did not realize he made the steering input, and testimony from an accident reconstructionist established that the change in steering "didn't really take effect" before impact.

Pepper sued Thelen, alleging he was negligent in, among other things, operating his vehicle at a rate of speed in excess of the posted speed limit, operating his vehicle at a speed that was too fast for conditions, and in failing to keep a proper lookout and pay proper attention to the roadway. Thelen denied liability and asserted that if he had been exceeding the speed limit, he did so unintentionally and without want of ordinary care, and that his actions were reasonable in light of the sudden emergency that transpired.

A jury trial took place in September 2023. At the close of evidence, Pepper moved for "a directed verdict on the issues of [sudden] emergency and … negligence per se," which the trial court denied. The trial court then instructed the jury on Thelen's defense of sudden emergency, to which Pepper objected, arguing that the evidence did not support the charge. Pepper also objected to the trial court's failure to give Pepper's proposed charges — charges the trial court had indicated at the charge conference that it would give — on negligence per se based on Thelen's violation of the speed limit and on a driver's duty to maintain a proper lookout for potential hazards. When the trial court instructed the jury on negligence per se, it included Pepper's contention that Thelen had violated statutes about following too closely and traveling a speed greater than is reasonable for conditions by reading the text of those statutes to the jury. It did not, however, make any reference to Pepper's contention that Thelen had violated the statute governing maximum speed limits or read that statute as part of its negligence per se instruction.[1]

---

[1] While deliberating, the jury sent the trial court a note asking for the definitions of "ordinary negligence," "sudden emergency," and "negligen[ce] [per se]," and for the "defi[ni]tions" of the two statutes that the trial court had read. In response, the trial court repeated its original charges on ordinary negligence and negligence per se (including reading two of the three statutes that Pepper contended Thelen violated), and, at the foreperson's request, twice repeated its charge on sudden emergency. Pepper again excepted to the trial court's omission of her contention that Thelen violated the speed limit statute in its charge on negligence per se, and to the court's charge on sudden emergency.

The jury subsequently returned a verdict in favor of Thelen, and the trial court entered final judgment on the verdict. Pepper filed a motion for new trial, which the trial court denied. This appeal followed.

1. Pepper contends the trial court erred in instructing the jury on Thelen's affirmative defense of sudden emergency. We agree. Because the evidence did not authorize such an instruction, the trial court erred in giving it and that error was not harmless as it provided Thelen a defense to which he was not entitled.[2] We therefore reverse the judgment of the trial court and remand the case for a new trial.

"A jury charge on the sudden emergency defense is authorized if the defendant presents any evidence, however slight, to support such a defense," and "[w]hether there was slight evidence authorizing a charge on the sudden emergency doctrine is a legal question," which we review de novo. *Smith v. Norfolk S. Ry. Co.*, 337 Ga. App. 604, 609(1) (788 SE2d 508) (2016).

---

[2] In a related argument, Pepper argues that the trial court erred in refusing to grant her motion for a partial directed verdict on the issue of sudden emergency. Pretermitting whether a motion for directed verdict is the proper procedural vehicle by which to obtain a ruling on the applicability of the doctrine, in light of our holding that the trial court's jury instruction constituted harmful error, we do not address this related argument. See *Rice v. Francis*, 374 Ga. App. 280, 281 n.1 (912 SE2d 160) (2025).

The sudden emergency defense provides that "if a defendant is confronted with a sudden emergency without sufficient time to determine with certainty the best course to pursue, he is not held to the same accuracy of judgment as would be required of him if he had time for deliberation," and as a result, the jury may take the existence of the emergency into account in deciding whether the defendant exercised ordinary care. *Smith*, 337 Ga. App. at 608–09(1) (punctuation omitted). "The sudden emergency defense is available where the evidence shows that there has been a sudden peril caused by circumstances in which the defendant did not participate and which offered him a choice of conduct without time for thought." *Rice v. Francis*, 374 Ga. App. 280, 281(1) (912 SE2d 160) (2025) (citation modified). Thus, central to the sudden emergency doctrine is that "the defendant have a choice of conduct." Id. (quotation marks omitted). As this Court aptly summarized in *Rice*, the sudden emergency

> defense is not available unless the evidence shows that the sudden peril offered the defendant a choice of conduct without time for thought, so that any negligence *in the defendant's choice* may be attributed to lack of time to assess the situation rather than lack of due care. The doctrine requires that the person confronted by the emergency have the opportunity to exercise *one of several reasonable alternative courses of action*. In the absence of such factors, there can be no conduct to which to apply the standard and the doctrine is inapplicable.

Id. at 281–82(1) (citation modified).

The facts, evidence, and theory of liability presented in *Smith* provide a prototypical example of when the doctrine is properly applied. There, plaintiffs' decedent was killed when the pickup truck he had been a passenger in was involved in motor vehicle collision that brought the pickup truck to rest on a railroad track crossing. *Smith*, 337 Ga. App. at 604. As soon as the pickup truck came to a rest, the crossing gates closed and lights and bells at the crossing activated because a freight train was approaching. Id. at 605. A federal regulation required that the locomotive engineer blow the train's horn at least 15 seconds before entering the crossing and continue sounding it until the train occupied the crossing. Id. at 605–06. The engineer began blowing the horn 22 seconds before the train entered the crossing, but four seconds into doing so, he saw the stationary truck on the track and stopped blowing the horn in order to move the throttle to the idle position and apply a series of four different brakes; he explained that "it was either blow the horn or put the train in emergency [braking procedures]." Id. at 606–07. The engineer was able to blow the horn again two seconds before hitting the truck. Id. In the time between the original accident and the train hitting the truck, plaintiffs' decedent had exited the truck and stood, facing away from the oncoming train, in a "daze." Id. at 607. As the train blew its horn the second time, plaintiffs' decedent turned to run but was struck and killed. Id.

7

Plaintiffs sued Norfolk Southern, claiming that the engineer was negligent in failing to continuously blow the train horn, arguing that had the horn sounded in compliance with the federal regulation, plaintiffs' decedent would have been alerted earlier and had time to safely flee the tracks. Id. 607–08. That is, plaintiffs' theory of liability was that the engineer was negligent in the *choice* he made to engage emergency braking procedures instead of continuing to blow the horn. On appeal, this Court held that the trial court properly instructed the jury on the sudden emergency doctrine because the evidence showed that upon seeing the sudden peril in front of him, the circumstances required that the engineer quickly choose between "alternative courses of action" — specifically, continuing to blow the horn or carrying out a sequence of emergency braking procedures — without time for deliberation or careful reflection. Id. at 609–10(1).

Thus, the doctrine is properly applied where, in addition to the defendant not participating in creation of the sudden peril, the evidence shows that the defendant had the opportunity to exercise one of two or more reasonable alternative courses of action and the defendant contends he was not negligent for failing to choose a course of action that allegedly would have prevented the plaintiff's injury. The defendant's position that he was not negligent in his choice is rooted in the fact that he did not have adequate time to evaluate the likely efficacy of his available choices in preventing

injury and make an arguably better decision. In essence, the doctrine is a policy-based defense that, in limited circumstances, cautions a jury against playing Monday-morning quarterback as it determines whether a defendant was negligent or simply made the wrong guess when confronted with a sudden peril.

Here, because there was no evidence that Thelen had alternative courses of action from which to choose and that his alleged negligence arose out of the choice he made, it was error for the trial court to instruct the jury on the defense of sudden emergency.[3] See *Rice*, 374 Ga. App. at 282–83(1) (harmful error to instruct on sudden emergency where there was no evidence that the defendant had the opportunity to exercise one of several reasonable alternative courses of action; evidence showed the defendant performed the only course of action he considered, which was to "slam on

---

[3] Upon review of the record, we disagree with Thelen's unsupported assertion on appeal that he "clearly made a choice" or that evidence that the semi-truck changed lanes and did not collide with the Taurus established that Thelen had reasonable, alternative courses of action from which he chose, such that application of the doctrine was warranted. Nor do we agree that testimony of the accident reconstructionist in response to a hypothetical question not premised on pre-accident facts or any purported choices actually considered by Thelen established that Thelen had the opportunity to exercise one reasonable choice over another, alternative reasonable choice. We are mindful that the doctrine applies where the negligence (and causation) alleged by the plaintiff arises from, or is "in" the defendant's choice. See, e.g., *Rice*, 374 Ga. App. at 281(1). Again, the doctrine is designed to inform juries that where a defendant has little to no time to assess which course of action is more prudent and the course of action he took indisputably led to injury, it does not necessarily follow that he was negligent in failing to take a different course of action.

his brakes"); *Butgereit v. Enviro-Tech Env't Servs.*, 262 Ga. App. 754, 757–58(2) (586 SE2d 430) (2003) (error to charge on sudden emergency where defendant did not contend he had or considered a choice between what he did, which was to brake, and some other course of action). Cf. *Maxineau v. King*, 304 Ga. App. 217, 218 (695 SE2d 732) (2010) (charge on sudden emergency authorized where defendant testified he chose between striking a smaller car that had pulled in front of him or moving to the left lane and potentially striking the plaintiff's truck); *Rayfield v. Farris*, 253 Ga. App. 167, 168 (558 SE2d 748) (2002) (no error in refusing to instruct on sudden emergency where there was no evidence that, in the brief period between realizing the peril and the collision, the defendant had any other option than to hit the plaintiff's vehicle).

2. With respect to Pepper's arguments that the trial court erred in failing to instruct the jury on negligence per se based on Thelen's violation of OCGA § 40-6-181, and on a duty to maintain a proper lookout, because the issues may recur on remand and in the interest of judicial economy, we address them here. See *Baldwin v. Vineyard*, 275 Ga. 134, 135(2) (562 SE2d 174) (2002).

"A trial court has a duty to charge the jury on the law applicable to issues which are supported by the evidence." *Jones v. Sperau*, 275 Ga. 213, 214(2) (563 SE2d 863) (2002) (punctuation omitted). A trial court errs in refusing a party's request to charge the jury on a particular issue if the request is "entirely correct and accurate;

adjusted to the pleadings, law, and evidence; and not otherwise covered in the general charge." *Lee v. Swain*, 291 Ga. 799, 800(2)(b) (733 SE2d 726) (2012) (quotation marks omitted).

Pretermitting whether the precise language of Pepper's request to charge on negligence per se for a violation of OCGA § 40-6-181 was a fully accurate statement of the law,[4] we conclude that based upon the evidence presented, Pepper was entitled to have the jury instructed on OCGA § 40-6-181 in the same manner it was instructed on the other two statutes she contended that Thelen violated, OCGA §§ 40-6-49 and 40-6-180, and that her proposed instruction was not encompassed by other charges. See *Almassud v. Mazquital*, 345 Ga. App. 456, 458(1) (811 SE2d 110) (2018) ("[A] trial court must instruct a jury on the law as to every controlling, material, substantial and vital issue in the case" (punctuation omitted)); *Gurin v. Gen. Motors Corp.*, 171 Ga. App. 159, 160(1) (318 SE2d 830) (1984) ("The trial court is obligated to instruct the jury on all theories and issues raised by the parties and supported by the evidence"). We likewise conclude that the evidence supported a charge on the duty to maintain a lookout for potential hazards in the road and that this specific duty was

---

[4] We note that Pepper's request to charge incorporated the criminal law notion of Thelen being "guilty" of negligence per se for driving at a speed in excess of the posted limit, which may have been misleading to the jury; nor was there evidence that he had been adjudicated guilty of violating OCGA § 40-6-181.

11

not addressed by the general charge. See *Findlay v. Griffin*, 225 Ga. App. 475, 476(1) (484 SE2d 80) (1997) ("Although the trial court charged that the plaintiff had a duty to exercise ordinary care, such a charge does not encompass the specific duty to maintain a lookout for potential hazards.").

3. As to Pepper's last remaining enumeration that may recur on remand — namely, that the trial court erred in denying her motion for a "partial directed verdict" on the issue of negligence per se — we discern no error in the trial court's denial of the sparsely-articulated motion.[5]

We reiterate that "negligence per se is not liability per se." *Hite v. Anderson*, 284 Ga. App. 156, 158 (643 SE2d 550) (2007) (punctuation omitted). "Even where a plaintiff establishes negligence per se, a defendant is not necessarily liable as a matter of law but bears the burden of showing that the violation was unintentional and in the exercise of ordinary care," and the plaintiff still bears the burden of proving proximate cause, an issue generally reserved for the jury. Id. (citation modified). See also *Butgereit*, 262 Ga. App. at 755(1) (defendant's failure to contest citation for traffic violation was conclusive of negligence if unrebutted, but to rebut prima facie showing, defendant can present evidence that violation "was unintentional and in the

---

[5] Pepper's full motion on negligence per se stated: "The plaintiff moves for a directed verdict … on the issue of negligence per se. The negligen[ce] per se relates to actions taken before any hazard was appreciated."

exercise of ordinary care"); *Groover v. Johnston*, 277 Ga. App. 12, 17(2) (625 SE2d 406) (2005) (affirming denial of judgment as a matter of law on negligence per se claim where issue of proximate cause was a jury question). Here, because the record does not show a conclusive and unrebutted admission of negligence per se and because there was evidence that the collision would have happened even if Thelen had been traveling within the speed limit, the trial court correctly denied Pepper's motion for partial directed verdict on the issue of negligence per se.

Accordingly, we reverse the judgment below and remand the case for a new trial.

*Judgment reversed and case remanded. McFadden, P. J., and Watkins, J., concur.*